UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
MARKET CENTER EAST RETAIL PROPERTY, INC.,
    Debtor.                        No. 11-09-11696 SA

### MEMORANDUM OPINION ON DEBTOR'S REQUEST TO HAVE LURIE & PARK COMPENSATION QUESTIONS DETERMINED BY ARBITRATION

Debtor in possession Market Center East Retail Property, Inc. ("Debtor") has filed its Debtor's Motion for Stay [to Arbitrate Fee Issue] (doc 176) and Debtor's Motion to Dismiss (doc 179), requesting the Court to permit the Lurie & Park compensation issues to be determined in a nonjudicial procedure by the Beverly Hills (California) Bar Association. Barak Lurie and Lurie & Park ("Applicant") have objected (doc 183), as has the Office of the United States Trustee (doc 185), asking that this Court continue and complete its adjudication of the compensation issues.[1] For the reasons set forth below, the Court denies the relief requested by Debtor, and specifically denies the Motion for Stay and the Motion to Dismiss.[2]

---

[1] The Court has also considered Debtors' Brief in Support of Motion to Stay Award of Fees ("Debtor Brief") (doc 201), Debtors' Request for Judicial Notice Pursuant to Federal Rule of Evidence 201 (doc 200), and the Affidavit of Danny Lahave in Support of Debtor's Motion to Stay Award of Fees ("Lahave Affidavit") (doc 202), together with all the attachments thereto, and Barak Lurie/Lurie & Park's Response to Debtor's Brief in Support of Motion to Stay Award of Fees (doc 203).

[2] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(a). This is a core matter pursuant to 28 U.S.C. §157(b)(2)(A) and (B); In re Fricker, 131 B.R. 932, 938 (Bankr. E.D.Pa. 1991). This memorandum opinion
(continued...)

**Background**

Much of the background is set out in oral findings of fact already issued by the Court (Amended minutes, doc 161), and the Court assumes the reader's familiarity with same. Additional fact-finding occurs as needed below.

Briefly recapitulated, Barak Lurie and Danny Lahave, president and sole shareholder of Debtor, met in February 2009 to arrange for Applicant to represent (the soon to be) Debtor in an action against Lowe's Home Centers, Inc. concerning Lowe's action to abandon its purchase of the Debtor's commercial site. Messrs Lahave and Lurie signed a Legal Services Agreement ("Retainer Agreement") (doc 16-1), which provided in part as follows:

> 7. <u>Attorney Lien and Resolution of Disputes by Arbitration</u>:
> ...
> Any dispute relating to this Agreement or arising from the lawyer-client relationship of the parties in any manner whatsoever shall be submitted for binding arbitration to the Beverly Hills Bar Association, pursuant to Business and Professions Code Sections 6200 through 6202....

Applicant began working on the case, and then Debtor filed its chapter 11 petition on April 22, 2009. On June 10, 2009, Debtor filed its Application to Employ Barak Lurie (doc 16) to continue the litigation against Lowe's. The Application attached a copy of the Retainer Agreement. Doc 16-1. Applicant did continue the

---

[2](...continued)
comprises additional findings of fact, as may be necessary, and conclusions of law as may be required by Rule 7062, F.R.B.P.

Page -2-

litigation, which ultimately resulted in a settlement whereby Lowe's went through with the purchase of the property for $9,750,000. See Order on Debtor's Motion to Approve Sale of Real Estate Free and Clear of Liens to Lowe's Home Centers, Inc., docketed November 6, 2009 (doc 99). Debtor never submitted an order approving the employment application, and instead on November 9, 2009 filed a Withdrawal of Application to Employ Barak Lurie (doc 100). Applicant responded with its Motion for Order Disallowing Debtor's Purported Withdrawal of Application to Employ Barak Lurie/Lurie & Park (doc 107). On June 25, 2010, the parties filed the Stipulated Order Regarding Professional Services Rendered by Barak Lurie as Attorney for Debtor-in-Possession ("Stipulated Employment Order") (doc 128), by which the Court effectively ruled that Applicant was to be treated as employed by the estate as special counsel from no later than June 10, 2009, that Applicant was entitled to an administrative claim for reasonable compensation for the professional services rendered, that Applicant was entitled to submit a claim for those services and that both sides were free to argue about what the compensation should be.[3]

---

[3] The Stipulated Employment Order recites at 2-3:
IT IS THEREFORE ORDERED AS FOLLOWS:
A. Barak Lurie/Lurie & Park is entitled to an administrative claim for professional services rendered as special counsel for the Debtor-in-Possession, effective June 10, 2009, pursuant to 11 USC §327(e). The approval of terms of compensation is
(continued...)

Promptly thereafter Applicant filed the Application and noticed it out (doc 131). Debtor responded and objected (doc 136). On June 16, 2010, the Court conducted an evidentiary hearing on the Application, ordered briefing of certain issues (doc 157), and rendered preliminary findings of fact orally on the record on July 2, 2010 (doc 161).

In the course of briefing the compensation issues, the parties appeared to have agreed that the arbitration provisions in the contract and California law were not relevant in this proceeding. "Because the contract was never approved by the Court and is not binding upon the Debtor, these [arbitration] provisions are irrelevant...." [Debtor's] Memorandum in Opposition to Administrative Claim of Barak Lurie at 20-21 (doc

---

[3](...continued)
specifically reserved for determination upon the submission of Barak Lurie/Lurie & Park's administrative claim.
B. Barak Lurie and Lurie & Park shall be entitled to submit an administrative claim for reasonable compensation for professional services rendered to Debtor-in-Possession for purposes of prosecution and settlement of Debtors' lawsuit against Lowes Home Centers, Inc. Any such administrative claim shall disclose services rendered between April 22, 2009, the date of the petition, and June 10, 2009. The entitlement to fees incurred between the date of the petition and June 10, 2009 shall specifically be reserved for determination on submission of the administrative claim.
C. The terms of the retainer agreement which are contrary to the provisions of 11 USC §330 are void, including the terms requiring that billings either be paid or objected to within 15 days.
D. Any creditor or party in interest, including Debtor, may object to the amount of the administrative claim for compensation for professional services of Barak Lurie and Lurie & Park.
E. The Court reserves ruling on the amount of any fees sought by Barak Lurie/Lurie & Park.

158).  Debtor then changed its mind on that issue, Debtor's
Motion for Stay (doc 176) at 2-3 (request for stay of
determination of compensation dispute in this Court so Debtor can
invoke arbitration California, "in the interests of comity, and
in conformance with the written agreement of the parties") and
Debtor's Motion to Dismiss (doc 179) at 1 ("The claim of Barak
Lurie is subject to mandatory fee arbitration under California
Law and should be arbitrated in California.").  Thus the issue of
where the compensation issue will be finally resolved has been
squarely presented to the Court.

**Analysis**

    Debtor asserts that the compensation dispute between Debtor
and Applicant must be resolved by resort to California law; that
is, West's Ann. Cal. Bus. & Prof. Code §§ 6200-6204 ("MFAA").
Motion for Stay at 2, Motion to Dismiss at 1.  And Debtor asserts
that MFAA requires an arbitration proceeding.  <u>Id.</u>  In its brief,
Debtor elaborates that the basis for the arbitration demand is
rooted in the requirements of the California statutes rather than
in the language of the Retainer Agreement, <u>id.</u> at 1[4], asserting

---

    [4] Debtor is compelled to take that position (were it not
already the case) in light of the fact that the Retainer
Agreement, which had the provision for fee arbitration before the
Beverly Hills Bar Association quoted above, has been superseded
by the Stipulated Employment Order.  Debtor's current position is
contrary to the one Debtor asserted in the Motion for Stay at 2,
which explicitly relied on the fee arbitration language in the
Retainer Agreement, which in any event cites the statute.

that the Retainer Agreement is no longer in effect. <u>Id.</u> at 10-14. Debtor then asserts that MFAA required Applicant to notify Debtor of the right to arbitrate but failed to do so, and that Debtor could not waive a right (to arbitrate) which it did not know about because Applicant never informed it of that right. <u>Id.</u> at 2-9. Debtor also argues that the fee arbitration program administered by the Beverly Hills (California) Bar Association should be the forum for the arbitration, <u>id.</u> at 9, reargues the reasonableness of the requested compensation, <u>id.</u> at 14-22[5], and concludes by arguing that the determination of the compensation issue is not a core proceeding. <u>Id.</u> at 22-24. Regardless of the source of the asserted requirement to arbitrate, the Court finds that sending the parties to California to arbitrate the fee dispute is neither required nor advisable.

A. <u>This is the sort of compensation decision that should be decided by this Court.</u>

A determination of compensation in a bankruptcy case as an administrative claim is clearly a core proceeding that needs to be decided by the bankruptcy court. 28 U.S.C. §157(b)(2)(A) ("matters concerning the administration of the estate"). <u>See, e.g.</u>, <u>Gandy v. Gandy (In re Gandy)</u>, 299 F.3d 489, 496-97 (5th Cir. 2002) (when dealing with core proceedings arising under

---

[5] The Court addresses the compensation issue in an accompanying memorandum decision to be filed immediately after the entry of this memorandum decision.

Title 11 such as avoidance actions under §§ 544, 548 and 550,
"the importance of the federal bankruptcy forum provided by the
Code is at its zenith," thereby justifying the court's denial of
a motion to order arbitration as required by the partnership
agreement and the Federal Arbitration Act[6]). (Citation omitted.)

This is not to say that the Court cannot permit another
entity to make the decision, particularly if one or more parties
so request.  And in fact there is a dispute about Gandy's neat
distinction between core and non-core as determining whether
arbitration will be denied or allowed.  Compare, e.g., Jalbert v.
Zurich American Ins. Co. (In re Payton Const. Corp.), 399 B.R.
352, 361-64 ((Bankr. D. Mass. 2009) (listing and analyzing cases,
and ruling that bankruptcy court would adjudicate administrative,
turnover and fraudulent transfer claims) with Highway Solutions
LLC, Plaintiff v. McKnight Const. Co. Inc. (In re Highway
Solutions LLC), 2009 WL 2611949 (Bankr. M.D. Ala.) (garden-
variety contract dispute should be arbitrated).  What is clear is
that it is the bankruptcy court which makes the decision
concerning in which forum the fee determination is made.

Plaintiff cites Wood v. Wood (In re Wood), 825 F.2d 90 (5th
Cir. 1987), in arguing that deciding a quantum meruit claim such
as Applicant's is not a core proceeding but instead a related
proceeding, and thus should be decided elsewhere.  Debtor Brief

---

[6] 9 U.S.C. 1 et seq.

at 22-24.  Wood arose when a third party sued the debtors in
possession and another third party in the bankruptcy court
alleging an improper issuance of stock to debtors in a
postpetition transaction.  The district court had dismissed the
action for lack of jurisdiction, concerned that a broad
definition of bankruptcy court jurisdiction "would bring into
federal court matters that should be left to state courts to
decide."  Id. at 93.  On appeal, the Fifth Circuit dwelt on the
effect of the Bankruptcy Amendments and Federal Judgeship Act of
1984 at some length and determined that the bankruptcy court
could entertain the action as a related matter under 28 U.S.C.
§1334.  Id.  What was at issue in Wood was not core vs. non-core
issues but rather the jurisdiction of the bankruptcy court to
hear the related proceeding.

     The Fifth Circuit's statement in Wood that the "plaintiff's
suit ... is simply a state contract action that, had there been
no bankruptcy, could have proceeded in state court," id. at 97,
and thus not a core proceeding, is clearly correct.  See also
Arrellano v. Montoya (In re Arrellano), 2007 WL 1746246 (Bankr.
D.N.M.), in which the court granted a motion to permit
arbitration of contract dispute:

        The Plaintiffs here are not seeking to use any
        provision of the Bankruptcy Code to determine the
        validity, extent or priority of Citifinancial's lien.
        Rather, the result of the state court causes of action
        will dictate that result.

<u>Id.</u> at *6.  In granting the motion, however, the court considered

the issue of a request for arbitration of a core matter:

> A bankruptcy court does possess discretion however, to
> refuse to enforce an otherwise applicable arbitration
> agreement when the underlying nature of a proceeding
> derives exclusively from the provisions of the
> Bankruptcy Code and the arbitration of the proceeding
> conflicts with the purpose of the Code.

<u>Id.</u> at *3, quoting <u>Whiting-Turner Contracting Co. v. Electric</u>

<u>Machinery Enter. Inc. (In re Electric Machinery Enter., Inc.)</u>,

479 F.3d 791, 796 (5th Cir. 2002).[7]  <u>And see</u> <u>Insurance Co. Of</u>

<u>North America v. NGC Settlement Trust & Asbestos Claims Managment</u>

<u>Corporation (In re National Gypsum Company)</u>, 118 F.3d 1056, 1069

(5th Cir. 1997):

> We think that, at least where the cause of action at
> issue is not derivative of the pre-petition legal or
> equitable rights possessed by a debtor but rather is
> derived entirely from the federal rights conferred by
> the Bankruptcy Code, a bankruptcy court retains
> significant discretion to assess whether arbitration
> would be consistent with the purpose of the Code,
> including the goal of centralized resolution of purely
> bankruptcy issues, the need to protect creditors and
> reorganizing debtors from piecemeal litigation, and the
> undisputed power of a bankruptcy court to enforce its
> own orders.

In <u>National Gypsum</u>, the Fifth Circuit agreed that the bankruptcy

court had core jurisdiction of an adversary proceeding to

determine whether the plan and the confirmation order precluded

---

[7] Because the Court found that the cause of action to be
arbitrated was non-core, it did not need to decide the whether
the policy favoring arbitration conflicted with the Bankruptcy
Code.  <u>Id.</u> at *7.

Page -9-

the insurance company's claim against the estate, and the bankruptcy court had the discretion to override the arbitration clause in the contract assumed in the plan on the basis that the bankruptcy court provided the most efficient forum for resolving the claims. <u>Id.</u> at 1060-61.

In contrast to <u>Wood</u> and <u>Arrellano</u>, the facts of this case acutely illustrate the need to maintain control over administration of the estate, including controlling the forum. Debtor hopes for an award of no more than about $30,000, and thinks it has a better shot at that from an arbitration panel. But the panel could in theory also award the approximately $1,400,000 that Applicant asks for. An award in that amount would plunge the estate into administrative insolvency.[8] Of course reasonable compensation should be awarded, regardless of the administrative insolvency or not of the estate, but the threat of administrative insolvency highlights the importance of ensuring that the award of compensation complies with §330(a).

Debtor does not dispute the applicability of §330(a), and indeed argues vigorously that the standards of that section support the much smaller award. In effect, therefore, by moving

---

[8] At the end of December 2010, approximately $1,059,000 remained in the Court registry (doc 204), reduced by U.S. Trustee fees of about $14,000 (doc 210). Debtor's chapter 11 counsel is due about $99,000 (doc 211). An award of $1,400,000 to Applicant would therefore require, as Applicant concedes and Debtor undoubtedly fears, a proration of payment of the chapter 11 administrative expenses.

Case 09-11696-nlj11   Doc 213   Filed 03/22/11   Entered 03/22/11 13:51:23   Page 10 of 29

for the stay, Debtor asks this Court to permit an arbitration proceeding whereby the Beverly Hills Bar Association will apply the standards of §330(a).[9]  That makes little sense.  This is an issue that goes to the heart of this Court's control over the proceedings it presides over, to ensure a timely and fair administration of the case and compliance with its orders.  <u>Gandy</u>, 299 F.3d at 495, <u>In re Fricker</u>, 131 B.R. at 938.  In consequence, there is no question that this Court should and will decide the issue of Applicant's compensation and provide for payment of such in this case.

B.  <u>The Stipulated Employment Order governs this decision and does not require or permit mandatory fee arbitration in California.</u>

The Stipulated Employment Order (doc 128) is now by its terms the governing document for this fee determination.  That document is a bankruptcy court order (in any event, not a California court order), and it says nothing about MFAA (or any other arbitration).  Indeed, the Stipulated Employment Order clearly presumes that this Court will decide the issue.  Thus, in effect, Debtor has agreed that arbitration is not required and will not be employed.

---

[9] To be clear, Debtor also argues that the requested fees are also not reasonable under California law, citing <u>Community Redevelopment Agency of the City of Santa Ana v. Matkin</u>, 272 Cal.Rptr. 1, 6, 220 Cal.App.3d 1087, 1099 (1990).  Debtor's Brief at 16.  This is presumably the standard Debtor would argue in arbitration.

C.    The doctrine of judicial estoppel precludes Debtor from
      seeking mandatory fee arbitration in California.

     The Motion to Stay was filed October 15, 2010 (doc 176),

over three months after findings of fact were orally announced,

four months after the trial, about eleven months after Debtor

filed its notice of withdrawal of the employment application, and

sixteen months after filing the employment application (doc 16 –

June 10, 2009).  This minimal chronology demonstrates Debtor's

delay and the resulting unwarranted prejudice to Applicant,

thereby justifying the application of the judicial estoppel

doctrine.

     In New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001), the

Supreme Court described the doctrine of judicial estoppel and how

it works.

          Where a party assumes a certain position in a legal
          proceeding, and succeeds in maintaining that position,
          he may not thereafter, simply because his interests
          have changed, assume a contrary position, especially if
          it be to the prejudice of the party who has acquiesced
          in the position formerly taken by him.  This rule,
          known as judicial estoppel, generally prevents a party
          from prevailing in one phase of a case on an argument
          and then relying on a contradictory argument to prevail
          in another phase.

Id. at 749 (citations and internal punctuation omitted).  Thus,

the three elements of judicial estoppel are a position advocated

by the party and adopted by the court, then the party's later

inconsistent position, which prejudices the other party.

Case 09-11696-nlj11   Doc 213   Filed 03/22/11   Entered 03/22/11 13:51:23 Page 12 of 29

The Tenth Circuit applies <u>New Hampshire v. Maine</u>.  <u>Johnson</u> <u>v. Lindon City Corp.</u>, 405 F.3d 1065, 1069 (10th Cir. 2005).  For that matter, so does California.  <u>Levin v. Ligon</u>, 140 Cal.App.4th 1456, 1469, 45 Cal.Rptr.3d 560 (Ct. App. 2006).

The doctrine is applicable in the instant case to preclude Debtor from now changing the forum for deciding the compensation issue.  Debtor has adopted a later inconsistent position as compared with the position taken when it tried the matter and subsequently briefed it in this Court.  In effect Debtor asked this Court to rule on the compensation issue, and then when it started to become clear what the disposition in this Court would be (when the oral findings of fact were issued), Debtor asked the Court not to rule on the issue.  The Court adopted Debtor's earlier position when it conducted the trial and then issued preliminary findings of fact and drafted the first versions of an order on fees.  And by taking this new position, Debtor seeks to impose on Applicant the unfair detriment of having made Applicant litigate in the bankruptcy court in the District of New Mexico which Applicant would not have had to do if Debtor had (successfully) raised this issue sooner.

D.    <u>California law does not require that this dispute be</u> <u>arbitrated.</u>

The forum for resolving attorney fee disputes in California is governed by MFAA.  The background of the statute is useful for understanding its applicability in these circumstances.

Page -13-

The policy behind the mandatory fee arbitration statutes was to alleviate the disparity in bargaining power in attorney fee matters which favor the attorney by providing an effective, inexpensive remedy to a client which does not necessitate the hiring of a second attorney.

Law Offices of Dixon R. Howell v. Valley, 129 Cal.App.4th 1076, 1086-87, 29 Cal.Rptr.3d 499, 505 (Ct. App. 2005) (internal punctuation and citations omitted).

In the instant case, of course, there is no disparity in bargaining power, and no need for Debtor to hire a "second" attorney; it already has a congery of attorneys representing it.[10] Thus the question arises about the applicability of MFAA in this case. The Court finds that even applying MFAA to these facts, Debtor has not established a right to arbitrate this fee dispute under California law.

As already noted, the Motion to Stay was filed October 15, 2010, over three months after the issuance of the oral findings of fact, four months after the evidentiary hearing, about eleven months after Debtor filed its notice of withdrawal of the employment application, and sixteen months after filing the employment application.

Debtor relies heavily on its assertion that it never received the notice mandated by §6201(d). Debtor asserts that it "did initiate the present Motion to Stay within 24 hours of

---

[10] Ironically, it is the attorney seeking payment that has had to hire a "second" lawyer.

Page -14-

receiving notification that it had the statutory right to MFAA fee arbitration." Debtor Brief at 2, citing the Lahave Affidavit. Doc 202. The Lahave Affidavit asserts that Mr. Lahave's California counsel asked him if he had received any notice of a statutory right to arbitrate the fee dispute, that he has never received any such notice, and that he promptly notified bankruptcy counsel. Id., ¶5. Debtor also asserts that the notice of the right to arbitration in the Retainer Agreement was insufficient to have put Debtor on notice of its statutory right because the Retainer Agreement is void. Debtor Brief at 1.

To begin with, there is no notice prerequisite for waiver under § 6201(d) (client commencing an action or filing a pleading seeking a judicial resolution). Compare § 6201(b) (if notice given, a client's failure to request arbitration before filing a pleading is deemed to be a waiver). "Debtor admits that it contested the contingent fee claim of Lurie when debtor first began to suspect that Lurie was asserting a claim to a contingent

fee."[11]  Debtor's Response to Motion for Relief from Stay [sic[12]],
¶4.  Doc 116, filed December 16, 2009.

Contrary to Debtor's position, the failure of the attorney
to give [the allegedly] required notice is not fatal to a
collection action.  § 6201(a) states "[f]ailure to give this
notice shall be a ground for the dismissal of the action of other
proceeding."  Courts interpreting this sentence hold that it is
"a" ground to dismiss and that dismissal is not mandatory.
Valley, 129 Cal.App.4th at 1088, 29 Cal.Rptr.3d at 507; Richards,
Watson & Gershon v. King, 39 Cal.App.4th 1176, 1179, 46
Cal.Rptr.2d 169 (Ct.App. 1995) (Dismissal is discretionary under
§ 6201).

> To be clear, the MFAA provides that the attorney shall
> give the client notice of its right to arbitration at
> or before the time the attorney brings suit, and this
> notification requirement is an important feature of the
> statute. We simply hold here-consistent with the
> holding and reasoning of Richards, supra, 39
> Cal.App.4th 1176, 46 Cal.Rptr.2d 169-that the client
> may not assert universally the attorney's noncompliance
> with section 6201(a) as a defense to the attorney's
> action for fees, without regard to the circumstances of
> the case or the client's conduct in defending the
> action.

---

[11] To be fair, the term "contested" does not necessarily
mean that Debtor went on the offensive.  But it is accurate to
say that Debtor has carefully (albeit not so successfully)
orchestrated this compensation litigation.

[12] The opening lines of this filing more correctly
characterize the nature of the Response: "The Debtor ... hereby
responds to the *Motion for Order Disallowing Debtor's Purported
Withdrawal of Application to Employ Barak Lurie/Lurie & Park*, ...
filed herein on November 30, 2009...."  (Italics in original.)

Page  -16-

<u>Valley</u>, 129 Cal.App.4th at 1095 n. 16, 29 Cal.Rptr.3d at 513 n. 16.

The Motion for Stay recites that "Debtor has recently been apprised by its California counsel that fee disputes in California are subject to mandatory arbitration pursuant to the provisions of the California Business and Professional Code, Sections 6200 through 6202." ¶7. The clear implication of the statement is that Debtor had no idea that it was entitled to arbitrate its fee dispute with Applicant until it "recently" heard from its California counsel. But the Motion for Stay then refers to the Retainer Agreement as one basis for enforcing the statute. <u>Id.</u>, at ¶8. That paragraph effectively constitutes an admission by Debtor that it was on notice of the availability of fee arbitration for over a year and a half before it filed the Motion for Stay.

The Retainer Agreement language quoted at the beginning of this opinion specifically cites the statute at issue. The obvious purpose of the Retainer Agreement language is to tell the client that if there is a dispute about fees, arbitration is available – by statute – and will be employed. The language in paragraph 7 of the Retainer Agreement is a contractual agreement to arbitrate; at the same time it is notice to the client of the statutory provisions that provide for arbitration. Thus Debtor's repeated distinction between contractual arbitration and

statutory arbitration is off the mark; statutory arbitration has from the outset been known to and available to Debtor and the Retainer Agreement merely made explicit the parties' agreement to use it. (The Retainer Agreement has since been replaced by the Stipulated Employment Order to not use arbitration.)  And regardless of whether the Retainer Agreement is void (assuming that is the correct term), that agreement informed Debtor of the statute.  <u>See</u> <u>Guess?, Inc. v. Superior Court of Los Angeles County</u>, 79 Cal.App.4th 553, 557, 94 Cal.Rptr.2d 201 (Ct.App. 2000) (late filed commercial arbitration request denied in part because defendant/movant knew of the arbitration provisions in the underlying contract since before the filing of the lawsuit).

In addition, when he signed the Retainer Agreement in February 2009 for (soon to be) Debtor, Mr. Lahave had the services of Robert Diener, counsel to either the Debtor or Mr. Lahave (depending on what version of Mr. Diener's trial testimony one chooses to believe[13]).  Mr. Diener participated in the decision to enter into the Retainer Agreement.  Were there any question at any time about the right to arbitrate, Mr. Lahave had counsel available to address the issue.

---

[13] At trial, Mr. Diener first testified that he was corporate counsel for Debtor and then, when closely questioned on cross examination, testified instead that he was counsel for Mr. Lahave.  He has now recited in his affidavit that he was both. Affidavit of Robert Diener in Support of Debtor's Motion to stay Award of Fees, attached as Exhibit D to Debtor Brief, at 1 (doc 201-4 (page 2 of 6)).

Subsequently, Mr. Lahave also had the services of Lenske, Lenske & Abramson, employed by Mr. Lahave when ORIX sued him personally in California to collect on his guaranty of the corporate debt. The collection action was served on Mr. Lahave in August 2009. [Debtor's] Motion for Injunction, ¶7. Doc 63. The Lenske firm apparently is the "California counsel" that purportedly notified Mr. Lahave and Debtor of its statutory right to arbitration. Thus since mid 2009 Mr. Lahave has had available to him a number of lawyers, yet Debtor asserts it suddenly learned of the statutory right to fee arbitration only in October 2010. That assertion is simply not credible.

The MFAA does not absolutely require the arbitration of any attorney fee dispute; that is, the parties, and certainly the client, can waive[14] the right to arbitrate an attorney fee dispute. MFAA explicitly provides as follows:

> A client's right to request or maintain arbitration under the provisions of this article is waived by the client commencing an action or filing any pleading

---

[14]    [A]though often phrased in terms of "waiver", the critical issue in the context of the loss of arbitration rights is whether a party's filing of a lawsuit in the face of an agreement to arbitrate was conduct so inconsistent with the exercise of the right to arbitration as to constitute an abandonment of that right.

Valley, 129 Cal.App.4th at 1094 n. 14, 29 Cal.Rptr.3d at 513 n. 14 (internal punctuation and citations omitted). Although Debtor has not filed an action in lieu of requesting arbitration, the standard for "waiver" used in Valley is useful for purposes of this decision.

Case 09-11696-nlj11    Doc 213    Filed 03/22/11    Entered 03/22/11 13:51:23 Page 19 of 29

> seeking ... [j]udicial resolution of a fee dispute to
> which this article applies.

Id. at § 6201(d).

Debtor cites the wording of the statute limiting waiver to instances in which the client is "seeking" judicial resolution of the dispute or affirmative relief by means of a counterclaim for malpractice to a collection action, and argues that because Debtor has only defended against Applicant's actions[15], it cannot be said to have waived its right to arbitrate.

This is a highly technical characterization of its litigation tactics in this case. In substance, Debtor clearly opted to have this issue resolved in this Court certainly no later than when it withdrew the employment application in November 2009 – in effect a declaration that it did not intend to pay Applicant pursuant to the Retainer Agreement -- and did not invoke its right to arbitrate at that time.[16]

---

[15] "Market Center did not file the claim seeking judicial determination of Lurie's fee claim. Lurie and Park filed the claim. Market Center East responded to the claim defensively. None of Market Center East's pleadings sought judicial resolution (6201(d)(1)) nor sought affirmative relief against Lurie and Park. (6201(d)(2))." Debtor Brief at 7.

[16] Indeed, a better time (assuming there were one) to have invoked the right to arbitrate would have been when Mr. Lurie sent his first bill to Mr. Lahave once the "monetary portion" of the Lowe's settlement had been resolved. September 30, 2009 e-mail from Mr. Lurie to Mr. Lahave, attached as Exhibit C to the Lahave Affidavit.

At some point, failing to raise the right to arbitrate, even
if the client continues only to "defend" against a collection
action, becomes a waiver.  <u>See</u> MFAA § 6200(b)(3) (2009) ("This
article [for fee arbitrations] shall not apply to ... [d]isputes
where the fee or cost to be paid by the client or on his or her
behalf has been determined pursuant to statute or court order.").
A holding otherwise would permit a client to manipulate the
statute to require arbitration long after it had become unfair to
do so.  And in fact, California law does not limit waiver to the
instances described in §6201(d).

> MFAA § 6201(d) is not the only basis for finding waiver.
> At the heart of the matter, however, is whether the
> MFAA sets forth the only circumstances under which a
> client who does not receive written notice complying
> with section 6201(a) may waive MFAA arbitration rights.
> We conclude that it does not. There is nothing in the
> statute suggesting that the only way a client may waive
> arbitration (if the attorney does not give notice) is
> by filing an action or pleading seeking either
> resolution of a fee dispute or affirmative relief
> against the attorney for malpractice or professional
> misconduct. (See § 6201, subd. (d).) A holding that
> there are no nonstatutory grounds for waiving MFAA
> arbitration rights would permit a client-even one aware
> of its right to arbitration under the MFAA despite not
> receiving a section 6201(a) notice-to use the
> attorney's failure to give notice as a means of
> manipulating the judicial process. Courts will not
> allow such misuse of the system. As the Supreme Court
> held in a case where plaintiffs filed suit for the
> express purpose of determining their adversaries' legal
> theories before attempting to arbitrate the dispute:
> "Such procedural gamesmanship provides ample support
> for the trial judge's conclusion that plaintiffs filed
> their action in bad faith, and by doing so waived their
> right to arbitrate. 'The courtroom may not be used as a
> convenient vestibule to the arbitration hall so as to
> allow a party to create his own unique structure

Page -21-

combining litigation and arbitration.' [Citation.]"
(<u>Christensen [v. Dewor Developments</u> (1983),] 33 Cal.3d
778, 784, 191 Cal.Rptr. 8, 661 P.2d 1088.)

<u>Valley</u>, 129 Cal.App.4th at 1095, 29 Cal.Rptr.3d at 512-13

(belated claim of lack of notice did not justify dismissing the

attorney's collection action).[17]

California case law is replete with examples of parties

having waived the right to invoke arbitration, including in

connection with attorney fee disputes.  <u>E.g.</u>, <u>Valley</u>, 129

Cal.App.4th at 1098-1104, 29 Cal.Rptr.3d at 515-19; <u>Sobremonte v.</u>

<u>Superior Court</u>, 61 Cal.App.4th 980, 72 Cal.Rptr.2d 43 (1998);

<u>Adolph v. Coastal Auto Sales</u>, 184 Cal.App.4th 1443, 110

Cal.Rptr.3d 104 (Ct.App. 2010); <u>Guess?, Inc.</u>, 79 Cal.App.4th at

557, 94 Cal.Rptr.2d 201 (Ct.App. 2000); <u>In re Watts</u> 244 B.R. 823

(Bankr. N.D. Cal. 2000).  <u>Sobremonte</u>, frequently cited in

California cases, employed as the standard for waiver a six-part

test set out in <u>Peterson v. Shearson/American Exp., Inc.</u>, 849

F.2d 464, 467-68 (10th Cir. 1988), as follows:

> Despite our view of what good practice might have been,
> we must examine whether Shearson waived arbitration due
> to its inaction prior to the filing of its motion to
> compel arbitration and to stay the proceedings. In
> determining whether a party has waived its right to
> arbitration, this court examines several factors: (1)

---

[17] Of course Debtor does not seek a "dismissal" of the
compensation claim in this proceeding, but only that it be
allowed to arbitrate in California (and perhaps there to seek
dismissal).  These state court "dismissal" cases are nevertheless
relevant because the same standard applies to determine whether
Debtor has lost the right to arbitrate.

Page -22-

whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [<u>e.g.</u>, taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party. <u>Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colorado</u>, 614 F.2d 698, 702 (10th Cir.), cert. denied, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980).

<u>Sobremonte</u>, 61 Cal.App.4th at 992, 72 Cal.Rptr.2d at 50.

Applying the <u>Peterson</u> factors, the Court finds as follows:

1.   Actions inconsistent with the right to arbitrate:  Up until Debtor asserted, at the earliest, the right to arbitrate in the Motion for Stay on October 15, 2009, no one could have guessed from Debtor's behavior that it sought anything but an adjudication from this Court of the compensation issue with Applicant.  This period included the lead up to the final evidentiary hearing, the hearing itself, and the post-trial briefing.

2.   Whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate:  Not only had the litigation machinery been substantially invoked, but the parties were far beyond mere

"preparation"; the trial and the post petition briefing were over.

3.    Whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay:  Debtor's request for arbitration concededly was not that close to the trial date; the trial had been over for about four months.

4.    Whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the [court] proceedings:  Debtor filed no counterclaim, and thus this factor weighs completely in Debtor's favor.

5.    Whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) had taken place:  The Court is not familiar with what sort of discovery is available in attorney fee arbitrations conducted by the Beverly Hills Bar Association[18], but those discovery opportunities are likely to be somewhat limited if the purpose of the arbitration process is "an effective, inexpensive" resolution of the dispute.  See Valley, quoted above, 129 Cal.App.4th at 1086-87, 29 Cal.Rptr.3d at 505.  By virtue of F.R.B.P. 9014, Debtor had available to it the discovery tools provided to all

_____

[18] In a fee arbitration before the Los Angeles County Bar Association, clients compelled the law firm to produce documents on two separate occasions.  Manatt, Phelps, Rothenberg & Tunney v. Lawrence, 151 Cal.App.3d 1165, 1169, 199 Cal.Rptr. 246, 248 (1984).

Case 09-11696-nlj11    Doc 213    Filed 03/22/11    Entered 03/22/11 13:51:23 Page 24 of 29

litigants by F.R.B.P. 7026 and 7030 through 7037, even if it did not use all of them.

6.      Whether the delay "affected, misled, or prejudiced" the opposing party:  Applicant has fully litigated, and briefed, all the issues in this Court.  It is true, as Debtor points out, that "courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses", Saint Agnes Medical Center v. Pacificare of California, 82 P.3d 727, 738, 31 Cal.4th 1187, 1203, 8 Cal.Rptr.3d 517, 530 (2003).  This is part of the larger rubric that a client's "mere participation in litigation and discovery, without prejudice to [the other party], would not necessarily compel a finding of waiver".  Sobremonte, 61 Cal.App.4th at 995, 72 Cal.Rptr.2d at 52.  But in this case Debtor's role in this Court has gone far beyond "mere participation" and has, as illustrated above, substantially prejudiced Applicant.

> Arbitration is an expedient, efficient and costs-
> effective method to resolve disputes.  If we consider
> the amount of time and money [the parties] have already
> spent in the judicial system, any benefits they may
> have achieved from arbitration have been lost.

Id., 61 Cal.App.4th at 996, 72 Cal.Rptr.2d at 53.

Debtor correctly points out that no decision had been rendered by the Court on the compensation application at the time that Debtor invoked the right to arbitration.  However, "it is not essential that the litigation be reduced to judgment in order

Page  -25-

to find that a party has waived its right to contractual arbitration." Valley, 129 Cal.App.4th at 1097, 29 Cal.Rptr.3d at 514, citing, inter alia, Saint Agnes, 82 P.3d at 738, 31 Cal.4th at 1203, 8 Cal.Rptr.3d at 530 (citation omitted).

Acknowledging that Debtor has filed no counterclaim against Applicant, the overwhelming weight of the Peterson factors requires the Court to overrule Debtor's arbitration demand. This result is consistent with, indeed compelled by, California case law, including Valley (attorney fee arbitration demand 15 months after lawsuit commenced), Sobremonte (ten month delay in requesting attorney fee arbitration while parties and court wasted valuable resources litigating), Adolph, 184 Cal.App.4th at 1447, 110 Cal.Rptr.3d at 107 (citing Sobremonte, 6 months and discovery delaying tactics override defendant car dealer's assertion that "it moved for [commercial] arbitration at its very first opportunity"); Watts, 244 B.R. at 833 (citing Sobremonte, court found that a 21-month delay in asserting the right to arbitrate, raising it in opening argument at the trial, constituted a waiver); Guess?, Inc., 79 Cal.App.4th at 555, 94 Cal.Rptr.2d at 201 (arbitration of commercial dispute):

> A defendant answered a complaint but did not allege a
> right to arbitrate as an affirmative defense, then
> participated in the discovery process without claiming
> a right to arbitrate. Three months later, the defendant
> moved to compel arbitration. The plaintiff cried foul,
> pointing out that the defendant had known about the
> arbitration provision at the time this case was filed
> and served. The trial court said there was no waiver

and compelled arbitration. We conclude otherwise on the theory that, in litigation as in life, you can't have your cake and eat it too. (Footnote omitted.)[19]

See also Manatt, Phelps, 151 Cal.App.3d at 1173-74, 199 Cal.Rptr. at 251:

> In considering appellants' claim of waiver, the case of Christensen v. Dewor Developments (1983) 33 Cal.3d 778, 780, 191 Cal.Rptr. 8, 661 P.2d 1088, is instructive. There a plaintiff elected the judicial forum, yet in his complaint and amended complaint recited a preservation of the right to arbitrate the dispute in accordance with the contractual provision. After unfavorable pretrial rulings against him, plaintiff dismissed the complaint and filed a petition to compel arbitration.

This result is also consistent with the parties' relative equality in bargaining power and sophistication.

> Finally, the policy behind section 6201 does not require mandatory dismissal. As was explained in Manatt, Phelps, Rothenberg & Tunney v. Lawrence (1984) 151 Cal.App.3d 1165, at page 1174, 199 Cal.Rptr. 246, "[t]he policy behind the mandatory fee arbitration statutes ... is to alleviate the disparity in bargaining power in attorney fee matters...." Mandatory dismissal presupposes that in every fee dispute, no matter who the parties are and no matter what the

---

[19] The facts in cases in which arbitration demands were honored differ significantly from the facts in this bankruptcy case. An example is Saint Agnes, 82 P.3d at 730-31, 31 Cal.4th at 1192-93, 8 Cal.Rptr.3d at 521-22. Defendant PacifiCare filed an action against Saint Agnes for a determination of the status of certain health services agreements in March, Saint Agnes filed its own action in April, in July PacifiCare informally requested arbitration of the contract issues under the California Arbitration Act, and later in July PacifiCare filed a petition to compel arbitration. The California Supreme Court, relying on Sobremonte, found no waiver of the right to arbitrate based on PacifiCare's attempt to change venue of one of the cases and the "mere filing" of the initial action. 82 P.3d at 736, 31 Cal.4th at 1201, 8 Cal.Rptr.3d at 528.

Page -27-

circumstances may be, the attorney will always have the upper hand. We find this presumption unwarranted. On occasion, the lawyer will not have superior bargaining power and a sophisticated client will know of its right to arbitration whether or not it received notice. Under those circumstances, mandatory dismissal would not further the policy behind section 6201 and could, in fact, work an injustice. Making dismissal discretionary, however, avoids such problems by giving the trial court the opportunity to consider all the relevant facts before deciding whether to dismiss.

Richards, 39 Cal.App.4th at 1180, 46 Cal.Rptr.2d at 172.  See also Manatt, Phelps, 151 Cal.App.3d at 1173, 199 Cal.Rptr. at 251:

[T]he record includes declarations which indicate that defendants were sophisticated business people, one of whom was a law student, the other a licensed attorney. Defendants shared office space with plaintiff law firm and were integrally involved in the work done on their behalf by plaintiff. They had been offered access to the very documents, computer billing sheets, which they now contend revealed the affirmative claims. We view their claim of newly discovered causes of action, as perhaps did the trial court, with some skepticism.

Thus even if all the facts were as Debtor has portrayed them, Debtor would still not have established the basis for requiring arbitration under California law.

**Conclusion**

What is quite apparent from Debtor's actions is that it committed to employ Applicant, then backed out of that commitment, then agreed to have this Court decide the issue of compensating Applicant, and has now decided to back out of that agreement as well.  The Stipulated Employment Order constitutes the agreement of the parties for this Court to determine the

Page -28-

compensation issues, upon which Applicant and this Court have relied, consistent with this Court's obligation to administer this case. In consequence, the Court will deny the Motion for Stay and the Motion to Dismiss, since the basis of the latter is the request that the compensation issues be referred to arbitration. The Court will enter appropriate orders.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: March 22, 2011

Copies to:

Daniel J Behles
Moore, Berkson & Gandarilla, P.C.
P.O. Box 7459
Albuquerque, NM 87194

Ronald Andazola
Assistant US Trustee
PO Box 608
Albuquerque, NM 87103-0608

Deron B Knoner
PO Box AA
Albuquerque, NM 87103

James Rasmussen
PO Box AA
Albuquerque, NM 87103-1626