UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
MARKET CENTER EAST RETAIL PROPERTY, INC.,
    Debtor.                                        No. 11-09-11696 SA

**MEMORANDUM OPINION IN SUPPORT OF ORDER
(1) GRANTING REQUEST FOR EXPEDITED REVIEW AND FINAL ORDER
WITHOUT EVIDENTIARY HEARING (DOC 237), AND
(2) DENYING MOTION FOR STAY PENDING APPEAL (DOC 218)
OF ORDER APPROVING IN PART APPLICATION OF BARAK LURIE/
LURIE & PARK FOR COMPENSATION AS SPECIAL COUNSEL (DOC 217)**

On March 30, 2011, this Court entered its Order Approving in Part Application of Barak Lurie/Lurie & Park ["Applicant"] for Compensation as Special Counsel ("Order"). Doc 217. The Order, inter alia, awarded a sum of $350,752.06, and provided for the disbursement to Applicant[1] of the amount of the award from the Court Registry "upon proper request" from Applicant or its attorneys. The following day, and prior to the filing of the

---

[1] To be precise, the Order reads in part:
    **IT IS ORDERED** that the Lurie and Park [sic] is awarded Compensation and reimbursement of expenses totaling $350,752.06 as an administrative expense of the estate.
Id. at 1. The Court was surprised and somewhat embarrassed to see the error when Debtor's counsel brought it to the Court's attention at the hearing conducted on May 2, 2011. The remainder of the Order refers to Barak Lurie, Lurie & Park, or Barak Lurie/Lurie & Park. The Court has no explanation for what is clearly a typographical error, or why the extra "the" is in that decretal sentence, or why the Court misstated the name of Lurie & Park by substituting "and" for the ampersand. Were an appeal in this matter not docketed (Notice of Appeal – doc 224), the Court on its own would enter an order correcting this clerical mistake. See F.R.Civ.P. 60(a), incorporated into F.R.B.P. 9024. Nevertheless, the meaning of the order is clear, and any correction of the clerical error would not be made for the purpose of validating the order so much as "cleaning it up".

appeal of the Order, Market Center East Retail Property, Inc.
["Debtor"] filed the Debtor's Motion to Stay Pending Appeal and
Emergency Hearing [sic] ("Stay Motion").  Doc 218.  At Debtor's
request, id. at 2, the Court conducted an emergency preliminary
hearing that afternoon on the Stay Motion, and after hearing
presentations of counsel, orally denied the Stay Motion with
leave to Debtor request an evidentiary hearing.  Minutes (doc
219)[2]; Order Resulting from Emergency Preliminary Hearing on
Debtor's Motion for Stay Pending Appeal (doc 222).  The order
denying the Stay Motion also gave Debtor ten days from the entry
of the order denying the Stay Motion to request an evidentiary
hearing, id. at 1, which Debtor timely did.  Doc 226.  The Court
then conducted a preliminary hearing on the request for an
evidentiary hearing on Monday, May 2, 2011, at which it gave
Debtor the choice of having the Court immediately "finalize" its
ruling denying a stay pending appeal, or of having an evidentiary
hearing that would stretch out over an indeterminate (but
presumably expedited) period of time while Debtor conducted its
proposed discovery of Applicant and otherwise prepared for a

---

[2] The Stay Motion was filed at 1.31 pm MDT (doc 218), and
the hearing on the motion commenced at 4.04 pm MDT (doc 219).
The hearing came about so quickly because the Court would not be
available the following day (Friday, April 1) and Debtor's
counsel would not be available thereafter for a period of about
ten days to two weeks.  But the reality of the circumstances was
that the Court's order permitting Applicant to immediately obtain
the funds from the registry of the court compelled Debtor to act
as quickly as it did.

final evidentiary hearing.³  Debtor has now (May 3) filed its Request for Expedited Review and Final Order Without Evidentiary Hearing.  Doc 237.  For the reasons set forth below, the Court grants the request for the expedited review (doc 237), but denies the Stay Motion (doc 218).

**Analysis**

The standard for deciding whether to issue a stay on appeal has somewhat recently been considered in Nken v. Holder, __ U.S. __, 129 S.Ct. 1749 (2009).

> As noted earlier, those legal principles have been distilled into consideration of four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Id. at 1761 (internal punctuation and citations omitted).

Further,

> "A stay is not a matter of right, even if irreparable injury might otherwise result." Virginian R. Co. [v. United States], 272 U.S. [658], at 672, 47 S.Ct. 222 [(1926)]. It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." Id., at 672-673, 47 S.Ct. 222; see Hilton [v. Braunskill, 481 U.S. 770,] 777, 107 S.Ct. 2113 ("[T]he

---

³ Prior to the hearing on May 2, Debtor had filed a memorandum brief in support of its Stay Motion on Wednesday, April 27 (doc 234), to which Applicant had responded on Friday, April 29 (doc 235).  Unfortunately, the Court was unaware of the filing of the briefs, but in any event simply did not have the time to read them before the preliminary hearing on Monday, May 2.

Case 09-11696-nlj11    Doc 240    Filed 05/04/11    Entered 05/04/11 17:17:16    Page 3 of 11

traditional stay factors contemplate individualized
judgments in each case"). The party requesting a stay
bears the burden of showing that the circumstances
justify an exercise of that discretion. See, e.g.,
Clinton v. Jones, 520 U.S. 681, 708, 117 S.Ct. 1636,
137 L.Ed.2d 945 (1997); Landis v. North American Co.,
299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

Id. at 1760-61. Based on these standards, the Court denies the

Stay Motion.[4]

The first two factors of the traditional standard are
the most critical. It is not enough that the chance of
success on the merits be "better than negligible."[5]

Id. (Citation omitted.) In this instance, the Court certainly

agrees that not many bankruptcy courts award compensation in the

---

[4] At the emergency preliminary hearing, the Court relied
heavily on Tenth Circuit cases that discussed preliminary
injunctions, asserting that the standards for preliminary
injunctions are largely the same as the standards for staying a
judgment pending appeal.
>There is substantial overlap between these [factors
governing stays on appeal] and the factors governing
preliminary injunctions, see Winter v. Natural
Resources Defense Council, Inc., 555 U.S. ----, ----,
129 S.Ct. 365, 376-77, 172 L.Ed.2d 249 (2008); not
because the two are one and the same, but because
similar concerns arise whenever a court order may allow
or disallow anticipated action before the legality of
that action has been conclusively determined.

Id. Nevertheless, the Court now makes its decision explicitly
based upon the factors listed in Nken v. Holder.

[5] Nken v. Holder decided the question of whether the
"traditional standard" for a stay pending appeal applied to a
deportation order in the face of certain language from the
Illegal Immigration Reform and Immigrant Responsibility Act of
1996, 110 Stat. 3009-546. Id. at 1755. Thus much of the Supreme
Court's discussion is flavored by the stark facts of an immediate
deportation (with, in the Nken case, the assertion of the threat
of persecution upon return to Cameroon) versus how long an appeal
might take. "It takes time to decide a case on appeal.
Sometimes a little; sometimes a lot." Id. at 1754.

form of a partial contingency rather than based on a straight lodestar calculation. But for the reasons set forth in the Memorandum Opinion Approving in Part Application of Barak Lurie/Lurie & Park for Compensation as Special Counsel (doc 216)[6], the Court is quite comfortable that its decision is correct in the fact-finding, the applicable law, the reasoning and the conclusion.

Particularly is this the case when it appears that at the heart of Debtor's argument on March 31 and again now is an erroneous premise: that the Court's award of compensation to Applicant was based on – was essentially an adoption and enforcement of – the February 2009 Retainer Agreement and specifically its compensation arrangement. As the Court has tried to make clear, the Court understood (and still does) that the Retainer Agreement no longer controlled the compensation decision once the Court entered the Stipulated Order Regarding

---

[6] The memorandum opinion appears in Westlaw as <u>In re Market Center East Retail Property, Inc.</u>, 2011 WL 1204754 (Bankr. D.N.M.). The Court notes, however, that a short portion of the opinion, at the very end of the segment titled "Lodestar", at the top of page 37 in doc 216, has been inadvertently omitted from the published opinion at *10. The omitted text reads, following the word "say":
> ... administering an estate by getting a plan confirmed, or sales approved, or operating reports filed, are not activities that are easily valued in specific dollar amounts. But there is no lack of a concrete measure in the circumstances presented by this request for compensation, and so the lodestar is less needed or useful.

Professional Services Rendered by Barak Lurie as Attorney for Debtor-in-Possession (doc 128). Rather, the Court, in determining what compensation would be reasonable for Applicant for the work done and results achieved, looked to the parties' negotiations and statements in early 2009 to see how they viewed the litigation and the attendant risks and rewards, in order to determine reasonableness of compensation. And it was in that context that the Court settled on the partial contingency arrangement that the parties themselves had discussed and agreed was reasonable.

> In this instance, as the Court has already found, the parties had reached an arm's length agreement on the compensation to be paid—the hybrid of an hourly rate of $200/hour and the 15% contingency fee on the total recovery—when they signed the Retainer Agreement. And they still had that understanding when the employment application was filed June 10, 2010 [sic – should be 2009]. Debtor's subsequent attempts to evade the consequences of its agreement do not change the stubborn fact that Debtor and Applicant reached an agreement and <u>in the process acknowledged the reasonableness of the compensation arrangements. The Court treats that acknowledgment as effectively an admission of reasonableness that continues to bind the Debtor.</u>

<u>In re Market Center East Retail Property, Inc.</u>, 2011 WL 1204754 (Bankr. D.N.M.) at *10 (footnote omitted and emphasis added).

Thus, Debtor's misstatement during the March 31 emergency preliminary hearing of what the Court did in making its decision detracted from its argument that it is likely to be successful on

appeal.[7] Not that Debtor does not have the right to argue that issue on appeal (and will undoubtedly do so – see Statement of Issues on Appeal, at ¶3 (doc 231)), but from the Court's perspective, emphasizing that issue makes success on the merits of the appeal less likely.

At best, Debtor might "meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." <u>Oklahoma, ex rel., the Oklahoma Tax Commission v. International Registration Plan, Inc.</u>, 455 F.3d 1107, 1113 (10th Cir. 2006) (quotation marks, footnote and citation omitted). But in fact, this Court does not think that the issues decided in the award of compensation are anywhere near that serious or doubtful, so that the first factor of the test resolves itself against granting a stay.

Nor has Debtor demonstrated sufficiently that it will suffer irreparable harm.

---

[7] In its memorandum brief arguing the merits of the stay, Debtor does not pursue that argument, doc 234 at 3-8, but instead concludes that section of the brief by arguing:
> It is certainly not impossible that the appellate courts will view the issue differently or will decide to modify what up until now has been settled law. Despite these possibilities and the persuasive opinion written by this Court advocating for a new approach, Debtor has shown that he is likely to prevail on appeal under the current law.

<u>Id.</u> at 8.

Case 09-11696-nlj11    Doc 240    Filed 05/04/11    Entered 05/04/11 17:17:16 Page 7 of 11

> By the same token, simply showing some "possibility of irreparable injury," Abbassi v. INS, 143 F.3d 513, 514 (C.A.9 1998), fails to satisfy the second factor. As the Court pointed out earlier this Term, the " 'possibility' standard is too lenient." Winter, supra, at ----, 129 S.Ct. at 375.

Id. at 1761.  In this instance, even accepting at face value the exhibits tendered by Debtor and considering the significance ascribed to those exhibits by Debtor, the Court does not find that there is more than a possibility that Debtor will not be able to recover the funds from Applicant were Debtor to win its appeal.[8]  For example, it would be pure speculation to guess whether Mr. Lurie's political campaign platform of lower taxes, limited government and reduced spending will appeal to enough voters in southern California such that his campaign for the United States Congress will consume all or most of the funds at issue here.  Similarly, the fact that Messrs Lurie and Park have a sort of "duplex" arrangement – two different law firms of differing sizes sharing a common name and web page – does not suggest that Mr. Lurie is any less able to repay the funds in the event that this Court's decision is reversed on appeal.  Nor is the prospect of having to engage in collection activities against Mr. Lurie a basis for staying the delivery of the funds; at some

---

[8] The Court has looked at and read not only the exhibits attached to the Debtor's memorandum brief (doc 234), but also the exhibits that were tendered to the Court in an e-mail dated May 3, 2011 that was sent to the Court and opposing counsel.  Doc 238.  The attachments to the e-mail duplicate various items already filed with the Court.

Case 09-11696-nlj11    Doc 240    Filed 05/04/11    Entered 05/04/11 17:17:16    Page 8 of 11

point, losing on the merits after a full blown trial does have some adverse consequences.

Finally[9], depriving Applicant of the immediate benefit of the award of fees is a harm to Applicant that also needs to be taken into account.  The mere fact that Applicant has waited as long as it has to receive compensation is no reason to extend that wait.[10]  And as the Court pointed out at the emergency preliminary hearing, having cash available sometime in the future, even with accrued interest, is not nearly the same thing as having it available immediately.  See In re Murel Holding Corp., 75 F.2d 941, 942 (2nd Cir. 1935).

**Procedural Comment**

A final comment is worth making.  The Court recognizes the very real and difficult constraints that Debtor was under in attempting to obtain a stay.  This compensation adjudication is a contested matter pursuant to F.R.B.P. 9014, which incorporates many of the rules for adversary proceedings set out in F.R.B.P. 7001 et seq., but not Rule 7062.  Rule 7062 incorporates F.R.Civ.P. 62(a), which provides for an automatic stay of 14 days

---

[9] The parties agree that the public interest is not at issue in this decision.

[10] Nor, in response to Applicant's argument, is the long wait necessarily a reason not to stay the payment to Applicant. Applicant's memorandum brief at 4-5.  Doc 235.  And, for that matter, the Court has not factored in, one way or the other, the somewhat protracted litigation history of this matter or the finding of bad faith on the part of Debtor.  Id. at 1-2, 4-5.

on execution following the entry of a judgment. Since the Court's order provided that a check issue from the court registry as soon as Applicant asked for it, and since Applicant's counsel immediately asked for the check, Debtor was left to scramble for the stay on little more than a moment's notice. (This issue came up at the emergency preliminary hearing.) In consequence, Debtor was already somewhat behind the power curve when it sought to initiate discovery and provide evidence to the Court in support of its arguments for a stay. Nevertheless, while Debtor has not had the benefit of an evidentiary hearing in which to attempt to demonstrate Applicant's unfitness to receive its compensation during the pendency of the appeal, the Court believes that it has accorded enough regard for Debtor's arguments and proposed evidence that Debtor has received a sufficient hearing on the issue of the stay pending appeal.

**Conclusion**

For the foregoing reasons, the Court finds that it should rule immediately on Debtor's request for a stay (doc 237), and that it should not stay the award of compensation to Barak Lurie/Lurie & Park pending the outcome of an appeal (doc 218). An order will enter.

*[signature]*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  May 4, 2011

Copies to:

Daniel J Behles
Moore, Berkson & Gandarilla, P.C.
Attorney for Debtor
P.O. Box 7459
Albuquerque, NM 87194

Ronald Andazola
Assistant US Trustee
PO Box 608
Albuquerque, NM 87103-0608

Deron B Knoner
Attorney for Lurie
PO Box AA
Albuquerque, NM 87103

James Rasmussen
Attorney for Lurie
PO Box AA
Albuquerque, NM 87103-1626

Jane Yohalem
Attorney for Debtor
PO Box 2827
Santa Fe, NM 87504