BAP Appeal No. 11-17   Docket No. 47   Filed: 03/06/2012   Page: 1 of 18

FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

March 6, 2012

Blaine F. Bates
Clerk

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

---

| | |
|---|---|
| IN RE MARKET CENTER EAST RETAIL PROPERTY, INC.,<br><br>Debtor. | BAP No.   NM-11-017 |
| MARKET CENTER EAST RETAIL PROPERTY, INC.,<br><br>Appellant,<br>v.<br>BARAK LURIE and LURIE AND PARK,<br><br>Appellees. | Bankr. No.   09-11696<br>Chapter   11<br><br>OPINION |

Appeal from the United States Bankruptcy Court
for the District of New Mexico

---

Jane B. Yohalem, Santa Fe, New Mexico, (Daniel J. Behles of Moore, Berkson & Gandarilla, P.C., Albuquerque, New Mexico, with her on the brief) for Appellant.

Deron B. Knoner (James L. Rasmussen with him on the brief) of Keleher & McLeod, P.A., Albuquerque, New Mexico, for Appellees.

---

Before MICHAEL, THURMAN, and KARLIN, Bankruptcy Judges.

MICHAEL, Bankruptcy Judge.

   In the world where bankruptcy judges labor, love does not make the world go 'round.[1]  The United States Bankruptcy Code (the "Code"), and the discretion

---

[1]   Taken from "Love Makes the World Go 'Round," written for the Broadway musical *Carnival!*, music and lyrics by Bob Merrill, 1961.  The phrase has also
(continued...)

granted to bankruptcy judges under the Code, do.[2]  In this appeal, we are asked to define the limits of a bankruptcy judge's discretion in awarding attorney's fees under § 330.  The appellant asks us to severely limit such discretion and confine a bankruptcy judge to what is commonly known as the "lodestar" approach–hours worked times hourly rate–in determining a reasonable fee.  The appellees, who were awarded far less than the amount sought, argue that the bankruptcy court acted well within its bounds in awarding a fee based upon the realities of the situation, the expectations of the parties, and the overall benefit bestowed upon the estate by the services rendered.  Upon review of the arguments submitted by counsel, the well-reasoned and thorough opinion of the bankruptcy court, and the operative provisions of the Code, we conclude that the bankruptcy court had the discretion to do what it did, and exercised that discretion wisely.  As a result, we affirm.

I.    FACTS

Danny Lahave ("Lahave") is president and sole shareholder of the debtor, Market Center East Retail Property, Inc. ("Market Center"), which owned a retail shopping center in Albuquerque (the "Shopping Center").  In 2007, Market Center entered into negotiations with Lowe's Home Center, Inc. ("Lowe's") to purchase the Shopping Center.  The negotiations resulted in Lowe's signing a purchase contract in August 2008 for a price of $13,500,000, and paying an earnest deposit of $105,000.  Closing of the transaction was scheduled to take place in February 2009.  In December 2008, blaming the bad economy, Lowe's informed Market Center that it would not complete the sale.

In February 2009, Lahave met with Barak Lurie of the firm Lurie & Park

---

[1]    (...continued)
been attributed to Lewis Carroll and Charles Dickens.

[2]    Unless otherwise indicated, all future statutory references are to Title 11 of the United States Code.

(collectively "Lurie"), a California litigation attorney, to discuss filing suit against Lowe's for abandoning its purchase of the Shopping Center. Also present at the meeting was Robert Diener ("Diener"), the transactions lawyer who represented Market Center in negotiating and drafting the purchase agreement with Lowe's. Lurie proposed representation of Market Center at his customary rate of $395 per hour, while Lahave proposed that Lurie be paid a contingency fee. After negotiation, Lurie and Market Center entered into a legal services agreement providing for compensation to Lurie at the rate of $200 per hour, plus a contingency fee equal to 15% of any sums recovered in damages or the purchase price of the Shopping Center occurring 90 days or earlier before the date first set for trial.[3] Lurie and Lahave both believed a settlement in the range of $200,000 was the maximum they could reasonably expect. On February 23, 2009, Lurie filed suit on behalf of Market Center against Lowe's for, among other things, breach of contract, breach of the covenant of good faith and fair dealing, fraud in the inducement, and negligent misrepresentation.[4] Immediately prior to April 22, 2009, Lowe's offered to purchase the Shopping Center for $7,500,000.[5]

Market Center filed its petition for Chapter 11 relief on April 22, 2009. The bankruptcy court found as a matter of fact that Market Center and Lahave failed to inform Lurie of the filing of the bankruptcy petition, and "knowingly misled the professional [Lurie] by failing to inform the professional of the filing

---

[3] *Memorandum Opinion Approving in Part Application of Barak Lurie/Lurie & Park for Compensation as Special Counsel ("Fee Opinion")* at 10-11 n.15, *in* Appellant's App. at 540-41, published at 448 B.R. 43, 51 n. 15 (Bankr. D.N.M. 2011). According to Lurie, his customary hourly fee at the time was $395 per hour. *See* Appellees' Brief at 3. The contingency fee was to be 20% if the settlement was within 90 days of trial. *Fee Opinion*, 448 B.R. at 51 n.15.

[4] *Verified Complaint for Damages*, *in* Appellant's App. at 297.

[5] *See Fee Opinion*, 448 B.R. at 53. The offer was communicated by voice mail on April 20, 2009, and followed up in writing on April 21, 2009.

-3-

of the bankruptcy case."[6]  On June 10, 2009, Market Center filed an application to employ Lurie to "continue his prosecution of the case against Lowe's . . . on the terms previously agreed to before the bankruptcy filing."[7]  The application referenced the contingent fee agreement between the parties.  Two objections to the application were filed, one by Orix Capital Market, LLC,[8] and another by the Office of the United States Trustee.[9]  Both were quickly resolved.  However, Market Center never submitted a proposed order approving the employment of Lurie to the bankruptcy court.

After the bankruptcy case was filed, a settlement was negotiated whereby Lowe's agreed to purchase the Shopping Center for $9,750,000.  Market Center secured an order authorizing the sale from the bankruptcy court on November 6, 2009.[10]  Three days later, Market Center sought to withdraw its application to employ Lurie.[11]  Market Center held silent as to why the application was being withdrawn.  Lurie filed a response, alleging Market Center had repeatedly advised Lurie of its intention to submit an order approving Lurie's employment, and that the withdrawal of the application after Market Center had received the full benefit

---

[6]   *Fee Opinion*, 448 B.R. at 68-71.

[7]   *Motion to Employ Barak Lurie, Attorney for Debtor-in-Possession* at 1, ¶¶ 5-6, *in* Appellant's App. at 31.

[8]   *Orix Capital Market, LLC's Objection to Debtor's Motion to Employ Barak Lurie, Attorney for Debtor-in-Possession*, *in* Appellant's App. at 97.

[9]   *Objection to Motion to Employ Barak Lurie as Attorney for Debtor In Possession*, *in* Appellant's App. at 103.

[10]   *Docket # 99, November 6, 2009*, Bankruptcy Docket Sheet, *in* Appellant's App. at 13.  An order approving settlement of the Lowe's litigation was entered on November 17, 2009.  *Order Approving Motion to Approve Settlement of Lowe's Litigation*, *in* Appellant's App. at 127.  After the sale to Lowe's was closed, the Shopping Center's secured creditor was paid, and the balance of the funds were deposited into the court registry.  *See Fee Opinion*, 448 B.R. at 60 n.38.

[11]   *Withdrawal of Application to Employ Special Counsel*, *in* Appellant's App. at 123.

of Lurie's services was inequitable and abusive. Lurie requested that Market Center's purported withdrawal be disallowed, that Lurie be given the opportunity to file a fee application, and that any fee allowed by the bankruptcy court be paid from the proceeds of the sale of the Shopping Center.[12] In a bench ruling on July 2, 2010, entered in the course of resolving the fee dispute between Lurie and Market Center, the bankruptcy court expressly found that "the withdrawal of the Barak Lurie employment application was done in complete bad faith on the part of Mr. Lahave [Market Center]."[13]

In January 2010, the parties filed a "stipulated employment order" approved by the bankruptcy court, providing that Lurie was entitled to an administrative claim for professional services rendered on and after June 10, 2009, but that the issues of: 1) the terms and amount of Lurie's compensation, and 2) Lurie's entitlement to compensation for services between April 9, 2009 (the date the bankruptcy petition was filed) and June 10, 2009 (the date the application to employ Lurie was filed), were specifically reserved for determination upon submission of Lurie's application. The stipulated order provided that "the terms of the retainer agreement which are contrary to the provisions of 11 U.S.C. § 330 are void[.]"[14]

Shortly thereafter, Lurie filed his application for compensation.[15] He

---

[12] *Motion for Order Disallowing Debtor's Purported Withdrawal of Application to Employ Barak Lurie/Lurie and Park*, *in* Appellant's App. at 130.

[13] *Transcript of Proceedings held on July 2, 2010*, at 15, *ll*. 15-17, *in* Appellant's App. at 775.

[14] *Stipulated Order Regarding Professional Services Rendered by Barak Lurie as Attorney for Debtor-in-Possession*, *in* Appellant's App. at 147, 149. The bankruptcy court also characterized the legal services agreement as an executory contract that was neither assumed nor rejected by Market Center. *Fee Opinion*, 448 B.R. at 50-51.

[15] *Application by Attorneys as Special Counsel for Debtor for Approval and Payment of Compensation ("Application")*, *in* Appellant's App. at 150.

sought compensation in excess of $1,470,000, which represented a 15% contingency fee on the $9,750,000 sales price of the Shopping Center to Lowe's,[16] plus hourly fees and costs. Lurie also sought reimbursement of $9,345.08 in fees, costs, and taxes associated with defending Market Center's motion to withdraw its application for Lurie's employment.[17] Market Center objected, asserting that reasonable compensation for Lurie "would be $28,000 [70 billable hours at $400/hour], less the $10,500 already paid, for a total administrative claim of $17,500, to be paid from the funds held in the court registry."[18] The bankruptcy court held an evidentiary hearing on Lurie's application, and allowed the parties to submit post-trial briefs.

On March 30, 2011, the bankruptcy court entered the Fee Opinion,[19] which contains detailed findings of fact and conclusions of law, and consumes more than 34 pages in the Federal Bankruptcy Reporter. As it considered the proper amount of fees to be awarded to Lurie, the bankruptcy court considered, among other things:

1. The benefit to the estate as a result of Lurie's efforts;
2. The time spent by Lurie, as well as his customary hourly rate (often referred to as the "lodestar" approach);
3. The compensation factors outlined in § 330(a)(3);
4. Similar factors outlined in the case law, on a detailed, factor-by-factor basis;
5. The fact that the parties negotiated the contingent fee agreement at

---

[16] The contingency portion of Lurie's request is $1,462,500 (15% x $9,750,000).

[17] Lurie retained Keleher & McLeod, P.A. to represent him in this matter. *See Application* at 6-7, ¶¶ 21, 23, *in* Appellant's App. at 155-56.

[18] *Debtor's Response to Application for Compensation by Lurie and Park*, *in* Appellant's App. at 193, 196. Prior to bankruptcy, Market Center had paid Lurie a retainer.

[19] 448 B.R. 43 (Bankr. D.N.M. 2011).

arm's length prior to the filing of the bankruptcy case;[20]

6. The fact that Market Center failed to inform Lurie of the bankruptcy filing;

7. The fact that Market Center acted in bad faith when it sought to withdraw its application to employ Lurie;

8. The fact that the settlement with Lowe's provided Market Center with sufficient funds to pay all creditors in full, and return a substantial sum of money to Lahave; and

9. The fact that Lurie devised an effective and creative strategy to bring Lowe's to the bargaining table and encourage Lowe's to purchase the Shopping Center for a substantially higher amount than previously offered.[21]

The bankruptcy court made detailed factual findings regarding the events that led to the sale, as well as detailed factual findings regarding the lack of credibility of various witnesses, including Lahave and Diener. Because the Shopping Center was ultimately sold to Lowe's for $9,750,000, not the $7,500,000 originally offered by Lowe's prior to the filing of the bankruptcy case, the bankruptcy court determined that Lurie should be awarded his 15% contingency fee based upon the

---

[20] The following portion of the bankruptcy court's Fee Opinion is most enlightening on this point:

> In this instance the parties thought initially that a $200,000 total recovery would be an excellent result, and that any recovery would likely be achieved only after considerable time and effort. The arm's length negotiations over the compensation arrangements reflect that these modest expectations were perfectly reasonable. Mr. Lurie initially sought a straight hourly compensation of $395 and Mr. Lahave sought a full contingency (presumably the standard 33%). Had the parties anticipated a large return as likely, perhaps neither of them would have taken the initial positions that they did. But what they did do was what parties do when they do not know the outcome: negotiate a deal based on the best information they have. The Court should take into account that fact. So, while the Court is not bound by the parties' agreement, as it probably would be had the agreement been "locked into place" by virtue of a § 328(a) order, at the same time the Court is not precluded from determining in retrospect that the agreed upon terms were and are reasonable and enforceable.

*Id.* at 64 (footnotes omitted).

[21] *Id.* at 68-69.

sale price increase of $2,250,000, and not the total sale price of $9,750,000.

The bankruptcy court awarded Lurie $350,752.06 in fees and expenses (the "Fee Award").[22] The Fee Award is comprised of four elements:

| | |
|---|---:|
| Contingency fee calculated as 15% of $2,250,000 | $337,500.00 |
| Hourly rates and costs from April 23, 2009, to June 10, 2009, at the rate of $200 per hour | 552.59 |
| Hourly rates and costs from June 10, 2009, to January 21, 2010, at the rate of $200 per hour | 8,043.98 |
| Fees for defense of purported withdrawal of application | 4,655.49 |
| Total preliminary award | $350,752.06[23] |

Market Center timely appealed. Lurie did not cross-appeal, instead taking the position that the Fee Award is within the discretion of the bankruptcy court and should be affirmed.

## II.  APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[24] Neither party elected to have this appeal heard by the United States District Court for the District of New Mexico. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and

---

[22]  *Id.* at 74; *Order Approving in Part Application of Barak Lurie/Lurie & Park for Compensation as Special Counsel*, *in* Appellant's App. at 608.

[23]  The bankruptcy court refers to the award as "preliminary" because it authorized Lurie to file a supplemental request for reimbursement of attorney's fees payable to counsel who represented him in preparing for and trying the evidentiary hearing on the application (June 16, 2010) and subsequent briefing. *Fee Opinion*, 448 B.R. at 74.

[24]  28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002; 10th Cir. BAP L.R. 8001-1.

-8-

leaves nothing for the court to do but execute the judgment.'"[25] A bankruptcy court's order allowing fees is final for purposes of appeal if it determines the total amount of compensation the professional is awarded in the bankruptcy case.[26] The order allowing Lurie's compensation does that, and is therefore final.

## III. STANDARD OF REVIEW

Debtor contends that an award of fees under § 330 must be made by looking only at hours worked times a reasonable hourly rate, whereas Lurie claims that § 330 grants a bankruptcy judge the discretion to award a modified contingent fee based upon the facts of the case. The issue of what is allowed by a statute is a question of law, which is reviewed by this Court *de novo*.[27] On the other hand, it is well-established, in a bankruptcy context, that reasonableness determinations under § 330 are "highly discretionary."[28] As such, if this Court concludes that the award made here (a modified contingency fee) is allowed under § 330, our task is limited to a determination of whether the bankruptcy court abused its discretion. "[A] trial court's decision will not be disturbed [under the abuse of discretion standard] unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the

---

[25] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[26] *In re Union Home and Indus., Inc.*, 376 B.R. 298, 302 (10th Cir. BAP 2007).

[27] *In re Duffin*, 457 B.R. 820, 822 (10th Cir. BAP 2011).

[28] *See, e.g., In re Commercial Fin. Servs., Inc.,* 427 F.3d 804, 810 (10th Cir. 2005) (bankruptcy courts "have wide discretion" in determining fee awards under § 330); *In re Rogers*, 401 B.R. 490, 492 (10th Cir. BAP 2009) (bankruptcy court has broad discretion to determine fee awards); *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 655 (8th Cir. 2008) (bankruptcy court has "broad power and discretion" with respect to fee awards) (internal quotation marks omitted); *In re Scarlet Hotels, LLC*, 392 B.R. 698, 705 (6th Cir. BAP 2008) (bankruptcy courts given "particular deference" with respect to fee applications as they have "intimate knowledge of the case").

bounds of permissible choice in the circumstances."[29]

## IV. ANALYSIS

Market Center argues that six separate issues on appeal mandate reversal.[30] Boiled to their essence (as they were at oral argument), these six issues may be

---

[29] *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (internal quotation marks omitted).

[30] Market Center frames the issues on appeal as follows:

1. Whether the bankruptcy court's interpretation of 11 U.S.C. § 330 (2005) to permit the court to compensate an attorney by awarding a percentage of the amount recovered by his work, rather than determining a fee on a lodestar basis, is consistent with the language and purposes of 11 U.S.C. § 330, as well as with the case law construing 11 U.S.C. § 330.

2. Whether, in light of the United States Supreme Court's recent decision in *Perdue v. Kenny A. ex rel. Winn*, __ U.S. __, 130 S. Ct. 1662 (2010), concluding both that the lodestar amount remains the customary method by which attorneys bill for litigation, and that the lodestar remains sufficient to attract competent counsel, the bankruptcy court erred in concluding that a contingency fee is now both customary in the marketplace and required to attract competent counsel.

3. Whether the bankruptcy court erred in interpreting 11 U.S.C. § 328 (2005) to authorize the bankruptcy court to compensate an attorney on a contingency basis, even when no § 328 order has been entered, the fee is determined at the conclusion of the work, and the fee is determined solely pursuant to 11 U.S.C. § 330.

4. Whether the bankruptcy court erred in reviewing the pre-bankruptcy retainer agreement between Attorney Lurie and Market Center for reasonableness, rather than independently determining a "reasonable" fee pursuant to Section 330.

5. Whether the court's reliance on Debtor's "admission" as to the reasonableness of the fee in the marketplace, or in the alternative, its taking of judicial notice of what is plainly a disputable fact, abrogated the bankruptcy court's duty to independently determine a reasonable fee.

6. Whether the bankruptcy court's application of a different, and more generous standard for awarding an attorney's fee because all of the creditors have been paid is consistent with both the language and the purposes of Chapter 11.

Appellant's Brief at 2-3.

condensed into a single argument: bankruptcy judges awarding fees under § 330 of the Code must award fees solely upon a calculation of time spent multiplied by hourly rate, otherwise known as the "lodestar" approach. Consideration of any other factors, according to counsel for Market Center, constitutes reversible error *per se*. We disagree.

> Section 330 provides in relevant part:
>
> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103–
>
>> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>>
>> (B) reimbursement for actual, necessary expenses.
>
> . . . .
>
> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account ***all relevant factors, including*–**
>
>> (A) the time spent on such services;
>>
>> (B) the rates charged for such services;
>>
>> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>>
>> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>>
>> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>>
>> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled

-11-

practitioners in cases other than cases under this title.[31]

The question is whether the factors contained in § 330(a)(3) constitute a closed set, or whether a bankruptcy court may look to factors not included in that list. The answer lies within the language of the statute.

Section 330(a)(3) expressly allows a bankruptcy court to look at "**all relevant factors**" as it makes a fee award. The list contained in § 330(a)(3) is not meant to be exhaustive; had Congress wished to limit a bankruptcy court's consideration to the factors listed in § 330(a)(3), it knew how to do so. With respect to fee awards under § 330, we have previously noted that:

> In determining what is a reasonable compensation, § 330(a)(3) mandates that the bankruptcy court consider the nature of the services, the extent of the services, and the value of the services, taking into account "all relevant factors." While a reasonableness inquiry is mandatory, *the factors to be taken into account in determining reasonableness are within the discretion of the bankruptcy court, which is best positioned to determine what is "relevant" in any given case. Section 330(a)(3) includes a nonexclusive list of factors that a court may (or may not) consider.* In addition, the Tenth Circuit has stated that in deciding the reasonableness of professional fees, either under § 330 or outside of bankruptcy, the lodestar analysis set forth in *Johnson v. Georgia Highway Express, Inc. may be relevant.*[32]

The word "relevant" does not mean exclusive or controlling.

The fatal flaw in Market Center's argument is that it removes the word "including" from § 330(a)(3). As the United States Supreme Court noted over

---

[31] § 330 (emphasis added).

[32] *In re Commercial Fin. Servs., Inc.,* 298 B.R. 733, 747-48 (10th Cir. BAP 2003), *aff'd,* 427 F.3d 804 (10th Cir. 2005) (emphasis added) (footnotes omitted). The "Johnson factors," which were developed in a civil rights case, are: 1) time and labor required; 2) novelty and difficulty of the issues; 3) skill required to render proper legal services; 4) preclusion of other employment; 5) customary fee; 6) whether the fee is fixed or contingent; 7) time limits imposed; 8) amount involved and results obtained; 9) attorney's experience, reputation, and ability; 10) undesirability of the case; 11) length and nature of the attorney/client relationship; and 12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated in part by Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (holding that attorney's fee need not be *capped* by a contingent fee agreement). Similar considerations are incorporated into § 330(a)(3).

-12-

eighty years ago, "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."[33] If Market Center is correct, all a bankruptcy court may do under § 330(a)(3) is look at a professional's hourly rates and time spent, and reduce the amount sought if it believes the rates are too high and/or the time spent is excessive. Such an argument runs contrary to every decision which notes the broad range of discretion given to bankruptcy courts in the area of fee awards. It is most telling that Market Center has not presented us with a single decision interpreting § 330(a)(3) in the narrow manner it proposes.

Market Center relies heavily upon a recent decision of the United States Supreme Court, *Perdue v. Kenny A. ex rel Winn* ("*Perdue*"),[34] in support of its argument that § 330 mandates use of the lodestar approach and prohibits consideration of any other factors. *Perdue* was not a bankruptcy case, and does not involve the application of § 330. *Perdue* was a class-action suit against the Georgia foster care system, in which it was alleged that deficiencies in that system violated foster children's constitutional and statutory rights. The statute governing fee awards in civil rights cases, 42 U.S.C. § 1988 ("§ 1988"), allows for a reasonable attorney's fee award to the "prevailing party," which is to be paid by the losing party. Section 1988 is often referred to as a "fee shifting" statute.

There are significant differences between fee awards in civil rights actions and bankruptcy cases. Section 1988 awards a reasonable attorney's fee to the "prevailing party," whereas § 330 awards are made directly to the attorney. While a fee award under § 1988 neither defines nor limits what the prevailing

---

[33]   *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941).

[34]   130 S.Ct. 1662 (2010).

-13-

party's attorney is ultimately entitled to receive,[35] a fee award under § 330 must be approved by the bankruptcy court. In addition, because § 1988 is a "fee shifting" statute, awards under § 1988 are assessed against the losing party "as part of the costs," and recovery of any fees is dependent upon prevailing in the suit. On the other hand, § 330 awards are not dependent on winning a litigation, and are paid from the debtor's estate. As such, § 330 awards are effectively "paid" by the debtor's unsecured creditors as a whole, rather than by the loser of a litigation. Comparing fee awards under the civil rights statutes and the Code is akin to comparing apples and oranges.

*Perdue* does not hold that the determination of attorney's fees is limited to a mathematical calculation of rate times hours, even in civil rights actions.[36] Nor does *Perdue* assert that its reasoning is applicable to all statutory attorney's fees awards. Perhaps most importantly, the *Perdue* Court specifically rejected a proposed analogy between lodestar enhancements and an attorney's agreement to reduce his hourly rate for a contingent outcome, stating:

> The analogy, however, is flawed. An attorney who agrees, at the outset of the representation, to a reduced hourly rate in exchange for the opportunity to earn a performance bonus is in a position far different from an attorney in a § 1988 case who is compensated at the full prevailing rate and then seeks a performance enhancement in addition to the lodestar amount after the litigation has concluded. Reliance on these comparisons for the purposes of administering

---

[35] *Venegas v. Mitchell,* 495 U.S. 82 (1990) (§ 1988 award does not limit recovery by prevailing plaintiff's attorney from his client in accordance with the terms of their contract). This ruling suggests that the "reasonableness" inquiry may be intended to protect third parties who might be required to pay someone else's attorney's fees (such as the losing party in a § 1988 case, or the unsecured creditors in bankruptcy), rather than the party that actually contracted with the attorney. If so, the fact that none of the attorney's fees in the present case will be paid by anyone other than Market Center–the very party who contracted to pay the fees–would certainly be highly relevant.

[36] *See* 130 S.Ct. at 1669 (reaffirming the rule that fee awards may sometimes be increased due to "superior performance and results").

-14-

enhancements, therefore, is not appropriate.[37]

We do not accept the argument that *Perdue* limits bankruptcy courts to exclusive use of the lodestar method in determining a reasonable attorney's fee under § 330.

Counsel for Market Center makes much of the fact that the parties agreed that Lurie would be compensated under § 330, arguing that application of § 330 renders any consideration of a contingent fee impossible because contingent fees are discussed in § 328(a).[38] The argument ignores the cumulative effect of the statutes. As previously noted, the factors outlined in § 330(a)(3) are illustrative, not exhaustive. Courts are not prohibited from considering other factors in making an award under § 330(a). Indeed, the only prohibition upon a court's review of compensation is found when a court approves a contingent fee under § 328. It is well established that once a contingent fee has been approved under § 328(a), the bankruptcy court may not revoke such approval and award compensation upon something other than a contingent fee basis unless "such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and

---

[37] 130 S.Ct. at 1675 (emphasis omitted).

[38] Section 328(a) provides that

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

§ 328(a).

conditions."[39]  It is the approval of a contingent fee under § 328 that limits the inquiry of the bankruptcy court, not the mandate in § 330(a) that a bankruptcy court consider "all relevant factors."

Market Center argues that by considering, as part of the totality of the circumstances in this case, that the parties had agreed upon a "hybrid" fee arrangement of a reduced hourly rate coupled with a relatively low contingent fee, the bankruptcy court abdicated its duty to make "an independent determination of a 'reasonable' fee pursuant to § 330."[40]  This contention is unpersuasive in light of the detailed analysis set forth in the Fee Opinion.  Even a cursory review of the Fee Opinion reveals that the bankruptcy court considered a myriad of factors, only one of which was the parties' fee agreement, as it determined a reasonable fee.  Perhaps most telling is the fact that the bankruptcy court did <u>not</u> award Lurie the amount he would have received under the fee agreement.  If the bankruptcy court relied only upon the agreement of the parties to determine the fee, we are left to ponder why the amount awarded was hundreds of thousands of dollars less than the amount due and owing under the parties' agreement.[41]

We also are not persuaded by Market Center's argument that the Fee Award is an impermissible "enhancement" of the amounts due Lurie.  First of all, we are not convinced that the Fee Award constitutes an "enhancement."  We believe the Fee Award reflects the reasonable value of the services performed, given the risks undertaken by Lurie.  One must remember what happened here.  At the time they entered into the contingent fee agreement, both Lurie and Lahave thought that a settlement in the range of $200,000 was the best that one could reasonably expect.

---

[39]  § 328(a).  *See also In re Tex. Secs., Inc.*, 218 F.3d 443, 445-46 (5th Cir. 2000).

[40]  Appellant's Brief at 39-40.

[41]  Lurie argues that the total amount that would have been due under the fee agreement exceeds $1.4 million.  *See* text *supra* at 6.

-16-

Instead, Lurie secured a sale of the Shopping Center for the sum of $9,750,000. The bankruptcy court determined as a matter of fact that the settlement was the direct result of the litigation strategy devised by Lurie. We do not find error in this conclusion. Using a sports metaphor, Lurie hit the ball out of the park (and then some). The bankruptcy court correctly recognized this. We are also not convinced that, even if the Fee Award were somehow considered an "enhancement," such an award is impermissible *per se*. In situations where counsel achieves exceptional results, fee enhancements are not unusual.[42]

## V. ATTORNEY'S FEES

Lurie asks this Court to award him the fees and expenses incurred in prosecuting this appeal. The bankruptcy court left open the possibility of an additional fee award in the Fee Opinion.[43] We leave the issue of any additional fee award to the sound discretion of the bankruptcy court. We note, however, that there does appear to be authority for such an award under § 503(b)(4).[44]

## VI. CONCLUSION

We conclude that § 330 allows a bankruptcy court to consider more than

---

[42] *See, e.g., In re Yankton College*, 101 B.R. 151 (Bankr. D.S.D. 1989) (fee enhancement justified where efforts of counsel resulted in payment of all secured and unsecured debt, and left in excess of $1 million "for the charitable and educational purposes of the debtor").

[43] The discussion of this issue is as follows:

> Applicant is also authorized to file a supplemental request for reimbursement of its Keleher & McLeod, P.A. attorney fees including but not limited to those incurred in preparing for and trying the evidentiary hearing on June 16, 2010 and all the subsequent briefing. Debtor may object to the supplemental application. The Court reserves the decision about whether to award some or all of the potentially requested attorney fees, particularly in light of the fact that Applicant requested compensation of approximately $1,400,000 but was awarded about one-fourth of that amount.

*Fee Opinion*, 448 B.R. 43, 76.

[44] *See., e.g., In re Wind N' Wave,* 509 F.3d 938, 941-42 (9th Cir. 2007).

hours spent and hourly rates as it determines a reasonable fee award.  We also conclude that the bankruptcy court acted well within its discretion in its fee award to Lurie.  Accordingly, we AFFIRM the decision of the bankruptcy court, and leave the matter of any additional fee award to the appellee to its sound discretion.