UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

MARKET CENTER EAST RETAIL PROPERTY, INC.,

Debtor.                                                              No. 11-09-11696 NLJ

**MEMORANDUM OPINION**

This matter is before the Court on remand from the Tenth Circuit Bankruptcy Appellate Panel following the Tenth Circuit's opinion remanding the case to the Bankruptcy Appellate Panel.

I.  **Procedural Posture and Need for Additional Evidence**

This matter is currently before the Court[1] on the Application by Attorneys as Special Counsel for Debtor for Approval and Payment of Compensation, doc. 130, (the "Application") filed on February 1, 2010, by Barak Lurie/Lurie & Park ("Lurie"). The Application was objected to by Market Center East Retail Property, Inc. ("Market Center" or "Debtor") in its Response to the Application, doc. 136 (the "Objection"). The Court held an evidentiary hearing on the Application on June 16, 2010, and made findings of fact on the record at a hearing on July 2, 2010, which were incorporated into an Amended Minute Entry, doc. 161. The Court issued its Memorandum Opinion Approving in Part Application of Barak Lurie/Lurie & Park for Compensation as Special Counsel, doc. 216 ("Application Opinion"), and entered an Order Approving in Part Application of Barak Lurie/Lurie & Park for Compensation as Special Counsel, doc. 217, on March 30, 2011 ("Application Order"). The Court's findings of fact were incorporated into and expanded upon in the Application Opinion.

---

[1] This matter was originally assigned to Hon. James Starzynski, now retired. This case was transferred to Hon. Niles Jackson on August 8, 2012, doc. 317.

1

Following the entry of the Application Order, Market Center appealed to the Tenth Circuit Bankruptcy Appellate Panel, which affirmed the Application Order. Market Center then appealed to the Tenth Circuit Court of Appeals, which reversed the Application Order in its opinion, which was filed in this Court as docket no. 341, and reported as *In re Market Center East Retail Property, Inc.* 730 F.3d 1239 (10th Cir. 2013) (the "Tenth Circuit Opinion"). This proceeding follows.

The Court held a status conference on November 25, 2013. The parties stipulated and the Court agreed at that hearing that no additional evidence needed to be presented to this Court. The parties and the Court also agreed that on remand, this matter should follow a traditional briefing schedule with Lurie to file a brief, filed on January 10, 2014, doc. 355 (the "Opening Brief"), Market Center to file a response, filed on January 31, 2014, doc. 359 (the "Response"), and Lurie to file a reply, filed on February 12, 2014, doc. 361 (the "Reply"). In addition to a response Market Center filed a reply, filed February 12, 2014, doc. 362, which was in the nature of a surreply, and this document was stricken by the Court.

## II. Findings of Fact

The Court makes no additional findings of fact. Instead the Court relies on the first-hand findings of the Court upon hearing the evidence presented in the first instance.

## III. Analysis

### 1. What constitutes reasonable compensation is the only issue to determine on remand.

The Court's finding that Lurie conferred a benefit on Market Center's estate has not been disturbed on appeal. No party has argued that Lurie's retainer agreement, attached to the Motion to Employ Lurie, doc. 16, as Exhibit A (the "Retainer Agreement") was approved under

2

§328(a)[2]. No party has appealed, or otherwise contests, the award of Lurie's fees, paid to Keleher & McLeod, for litigating the Application. Finally, no party has disputed that the actual, necessary expenses awarded by the Application Order were improper. Accordingly, this opinion is confined to a determination of the reasonable compensation to be awarded to Lurie pursuant to §330(a)(3).

The directive from the Tenth Circuit requires this Court to "consider the §330(a)(3) and relevant *Johnson* [*v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)] factors – and only those factors – when evaluating the reasonableness of attorney's fees under §330." *Market Center East*, 730 F.3d at 1249. The Tenth Circuit also held that the limitation on fee enhancements set forth in *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010), "do not apply to the award of attorney's fees under §330 in the bankruptcy context." *Market Center East*, 730 F.3d at 1249. The Tenth Circuit also affirmed the long-held sentiment that "bankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable." *Market Center East*, 730 F.3d at 1250 citing *In re Commercial Fin. Servs.*, 427 F.3d 804, 810 (10th Cir. 2005). And along the same lines the Tenth Circuit held that, while "the bankruptcy court must consider the §330(a)(3) and *Johnson* factors in evaluating whether a proposed fee amount is reasonable . . . Section 330(a) does not mandate any particular fee arrangement." *Id.* at 1249.

2. <u>The posture of this case presents an unusual situation and it is attributable to Lurie's failure to pursue §328 approval.</u>

One difficulty presented by the posture in this case is that the Retainer Agreement was not approved under §328. This puts the Court in the uncomfortable position of using an adjusted lodestar approach to determine a reasonable fee when the parties agreed to include a component

---
[2] Unless otherwise indicated all statutory references are to 11 U.S.C.

3

Case 09-11696-nlj11    Doc 372    Filed 04/10/14    Entered 04/10/14 11:11:02    Page 3 of 15

of contingency to calculate the fee. The Tenth Circuit Opinion cites approvingly to the following quote: "[U]nder 11 U.S.C. §330(a)(3), a bankruptcy court is <u>directed</u> to consider at least five factors, among which four either explicitly or implicitly direct a bankruptcy court to examine the amount of time spent on a project." *In re Commercial Fin. Servs.*, 427 F.3d at 811 (emphasis in Tenth Circuit Opinion). This approach clearly emphasizes use of the lodestar method to calculate fees under §330.

This approach is at odds with §328, which contemplates approval of contingency fee agreements. Section 328(a) provides that the trustee or debtor may hire a professional "on any reasonable terms and conditions of employment, including . . . on a fixed or percentage fee basis, or on a contingent fee basis." If an attorney's employment is preapproved under §328, then there is no basis to adjust the fee absent a showing that the terms and conditions "prove to have been improvident in light of developments not capable of being anticipated . . . ." §328(a). This creates "a two-tiered system for judicial review and approval of the terms of the professional's retention. Section 330 authorizes the bankruptcy court to award the retained professional 'reasonable compensation' based on an after-the fact consideration of 'the nature, the extent, and the value of such services, taking into account all relevant factors.' §330(a). However, section 328(a) permits a bankruptcy court to forgo a full post-hoc reasonableness inquiry if it pre-approves the [employment of the professional]." *In re Smart World Technologies, LLC*, 552 F.3d 228, 232 (2nd Cir. 2009). In this case there was no preapproval of the Retainer Agreement, although it is unclear why not.

The Stipulated Order Regarding Professional Services Rendered by Lurie as Attorney for Debtor-in-Possession, doc. 128 (the "Stipulated Order"), approves Lurie's employment under §327. The Stipulated Order also reserves the determination on the "amount of any fees sought"

4

by Lurie. Stipulated Order at 3. There was no agreement or order of the Court either denying or approving the Retainer Agreement. However, it is clear that this failure to approve the Retainer Agreement under §328 was not appealed by Lurie, and on remand this argument has not been advanced, so the Court will not now consider whether or not to approve the Retainer Agreement under §328.

This means the Court must proceed under §330, which is used mainly to consider a lodestar approach, to consider a fee structure that is not amenable to consideration under a strict lodestar approach. Fortunately, the Tenth Circuit recognized this difficulty and approved this Court's wide discretion to choose a fee arrangement applicable to this matter provided, of course, that the "total fee is reasonable when considered against the relevant factors." *Market Center East*, 730 F.3d at 1250.

3. <u>Calculating reasonable compensation by applying the 330(a)(3) and *Johnson* factors.</u>

In the Application, Lurie requested a total of $1,473,236.75 comprised of $1,472,385.00 in fees and $851.75. Application at 7. This was supplemented with a request of $9,345.08 for fees, costs, and taxes expended by Lurie as a result of Market Center attempting to withdraw its request for employment of Lurie. *Id.* at 7. The Court is not constrained by the amount requested by the Application. It is clear that the court may "award compensation that is less than the amount of compensation that is requested." §330(a)(2). The Court will apply all of the §330(a)(3) and *Johnson* factors to determine what amount Lurie is entitled to as reasonable compensation.

a. *The time spent on such services; 330(a)(3)(A).*

In performing the services that led to the settlement and purchase of the Debtor's property, Lurie spent 43.75 hours over the course of two months. Considering the Application

5

seeks approval of fees of $1,473,236, that breaks down to an hourly rate of over $30,000. Nothing in the record supports a finding that the value of Lurie's services exceeded $30,000 per hour. This factor weighs against granting the full amount requested in the Application.

 b. *The rates charged for such services; 330(a)(3)(B).*

This factor is one of the many factors that cannot be blindly applied to the facts of this case. In this case the rate charged had two components: an hourly component of $200 per hour; and a contingency component of 15% that applies to the full amount realized by the sale of the Debtor's property. The evidence presented at trial suggests that these rates were negotiated and agreed upon in an arms' length transaction by two sophisticated parties. Although it is lamentable that the Retainer Agreement was not presented for preapproval under §328, as set forth above, that does not mean that the Retainer Agreement is discounted and this factor is one such factor where it may be considered. This factor favors granting the Application.

 c. *Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of a case under this title; 330(a)(3)(C).*

At the time Mr. Lurie began his representation of Market Center, it was believed that the claim had an approximate value of $105,000. Market Center believed that the value of the Shopping Center was $8,000,000. After Lurie's representation, the litigation with Lowe's was settled and the Shopping Center was sold for $9,750,000. This represents a benefit to the estate of $1,645,000. This amount is different than the amount set forth in the Application Opinion of $2,250,000; however, the Court is not making a new finding. The Court is relying on the findings previously made to reach the conclusion that $1,645,000 was the amount of benefit to the estate.

6

Furthermore, at the time Market Center settled with Lowe's, Market Center and its principal were facing litigation on multiple fronts with the Debtor's secured lender, Orix Capital. The settlement with Lowe's funded resolution of the litigation with Orix Capital without significant further legal expenses, and allowed full repayment of all creditors of Market Center plus a large distribution to Mr. Lahave. If not for the services of Lurie this may not have been possible, and almost certainly would have taken much longer.

These facts weigh heavily in favor of granting the Application.

> d. *Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; 330(a)(3)(D).*

As set forth above, the timing of the settlement with Lowe's saved Market Center a significant amount of legal expense. Therefore, to the extent this factor deals with "timeliness," the services were performed within a reasonable amount of time. To the extent this factor deals with the amount of time spent to deal with this particular problem, the Court finds that 43.75 hours of time was commensurate with the difficulty of the problem. In that amount of time, Lurie formulated what would prove to be a very successful litigation plan, served discovery, responded to the Complaint, and participated in negotiations. Accordingly, this factor weighs in favor of granting the Application.

> e. *Whether the professional is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; 330(a)(3)(E).*

This factor does not apply to the case at bar. Mr. Lurie's employment as special counsel related to non-bankruptcy law.

> f. *Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title; 330(a)(3)(F).*

7

This factor goes to the crux of the issue presented by the Application. Based on the Court's experience an hourly rate of over $30,000, as requested by the Application, is not reasonable. However, the Court does find that Lurie's hourly rate of $400 or a 30% contingency arrangement would be customary compensation charged by comparably skilled practitioners in normal litigation situations. The fact that Lurie and Market Center split the difference in this case, agreeing to a half-price hourly rate and half of the customary contingency fee should not affect this. In *In re Adam Aircraft Industries, Inc.*, 2013 WL 414213 (Bankr. D. Colo. 2013), Judge Romero also approved a hybrid retainer agreement, where a firm agreed to take a 15% contingency and charge 75% of its normal hourly rate. In that case, as here, the hybrid fee benefitted the Debtor and the estate by lowering the up-front cost, and in this case Lurie benefitted from the potential — which was realized — of a great result. This factor weighs in favor of granting the Application.

g. *The time and labor required; Johnson 1.*

This factor repeats the first 330(a)(3) factor, and weighs against granting the Application. *See* supra, at 5-6.

h. *The novelty and difficulty of the questions; Johnson 2.*

The issue presented in the litigation with Lowe's amounted to a run-of-the-mill breach of contract claim. In that sense, this was not a particularly novel or difficult question. But that is not the end of the inquiry here. The parties agree that at the time Lurie was hired there was little potential upside and everyone involved believed that securing $200,000 for Market Center would be a good result. Lurie, however, developed a strategy that worked to far exceed that expectation. From this standpoint Lurie attacked a straightforward issue with a novel approach

8

that led to a great result. This merits consideration in relation to this factor. This factor, therefore, weighs in favor of granting the Application.

 i. *The skill requisite to perform the legal service properly;* Johnson 3.

As with the second *Johnson* factor, the breach of contract issue did not present a particularly unique problem; however, Lurie's creative approach demonstrated substantial skill and it is unknown whether another lawyer would have developed and successfully utilized this strategy. Accordingly, this factor weighs in favor of granting the Application.

 j. *The preclusion of other employment by the attorney due to the acceptance of the case;* Johnson 4.

There is no evidence that Lurie was working solely on this case during the pendency of the litigation. The fact that Lurie worked 43.75 hours over a period of two months strongly suggests that he did in fact have other work occupying the remainder of his time. This factor weighs against granting the Application.

 k. *The customary fee;* Johnson 5.

This factor mirrors §330(a)(3)(F). Although the customary fee would either have been wholly hourly or wholly contingent, the Court sees nothing wrong with a hybrid fee in this case because of the incentives for both parties. This factor weighs in favor of granting the Application.

 l. *Whether the fee is fixed or contingent;* Johnson 6.

Yet again, the Court is faced with a factor that does not reflect the way this transaction was structured. The Court is mindful of the Tenth Circuit's direction that this Court has "wide discretion to authorize many types of fee arrangements." Tenth Circuit Opinion, 730 F.3d at 1250. With this in mind, and with the directive to consider all of the *Johnson* factors, the Court finds that this hybrid-fee arrangement is appropriate in this situation. As set forth above, this

9

reduces the up-front cost to the Debtor and the estate, and allows the attorney to recover more on the back end, provided the representation is successful. In the original fee award, the Court characterized this as a "big-risk/big-reward" situation. The Tenth Circuit Opinion stated that this was an incorrect analysis. Instead, the proper characterization from Lurie's perspective is small up-front payment/big reward if successful. The fact that Lurie's litigation strategy was successful — perhaps more successful than Market Center could have ever hoped for — does not allow Market Center to use §330(a)(3) to avoid the consequences of its bargain. This factor weighs heavily in favor of granting the application.

　　m. *Time limitations imposed by the client or the circumstances;* Johnson 7.

There were significant time limitations associated with this litigation and Market Center reaped huge rewards because of how swiftly the litigation was resolved. As set forth above, Market Center was facing risky, protracted litigation with its main secured creditor, and Mr. Lahave was individually at risk of losing a substantial sum of money. Because of Lurie's successful strategy, the litigation with Lowe's was resolved quickly and allowed Market Center to resolve the litigation with Orix before incurring the significant legal expenses — and perhaps adverse rulings — that potentially lay ahead. This factor weighs in favor of granting the application.

　　n. *The amount involved and the results obtained;* Johnson 8.

In essence, the litigation with Lowe's was bet-the-company litigation. But for Mr. Lurie's successful litigation strategy, Market Center would have been placed in the difficult position of confirming a plan when the occupancy rate at its property was hovering at 25%. Although the Court cannot say confirmation of a plan that did not involve liquidation would have been impossible, it was certainly unlikely. Accordingly, for this factor the full amount of Market

10

Case 09-11696-nlj11   Doc 372   Filed 04/10/14   Entered 04/10/14 11:11:02   Page 10 of 15

Center's value — which turned out to be the amount of the Lowe's settlement, $9,750,000 — was at issue. The result Lurie obtained far exceeded the expectations of Market Center and its creditors, who were repaid in full. This factor, therefore, weighs in favor of granting the Application.

o. *The experience, reputation, and ability of the attorneys;* Johnson 9.

The Court did not receive much evidence on this issue, except as to the ability of Mr. Lurie in this case. However, the Court has yet to meet the attorney whose experience, reputation, and ability would entitle him to receive an hourly rate in excess of $30,000. This factor weighs against granting the Application.

p. *The undesirability of the case;* Johnson 10.

Mr. Lahave approached Mr. Lurie with this case after Lowe's had backed out of the purchase agreement and at a time when Market Center was experiencing cash flow problems. These problems led, in part, to the hybrid fee arrangement that was ultimately agreed upon. From the perspective of Mr. Lurie there was a possibility that he would not make as much money on this case as he could on other work. However, this does not make the case undesirable, and Mr. Lurie wisely included the contingency arrangment in the event he was successful. Furthermore, "undesirability" as referenced in *Johnson* does not address the situation at bar. Normally undesirability refers to cases that could hurt their public perception. *See Johnson*, 488 F.2d at 719 (Referring to the difficulties faced by civil rights lawyers in *NAACP v. Button*, 371 U.S. 415, 444 (1963), and *Sanders v. Russell*, 401 F.2d 241 (5th Cir. 1968), as the type of cases that would be, potentially, undesirable.) This factor weighs against granting the Application

q. *The nature and length of the professional relationship with the client;* Johnson 11.

11

The evidence demonstrates that Mr. Lurie was hired only for this specific piece of litigation and that neither Market Center nor Mr. Lahave had any previous relationship with Lurie. This factor weighs against granting the application.

r. *Awards in similar cases;* Johnson *12.*

This factor is difficult to analyze because the hybrid-fee arrangement has not been before the Court in prior cases often, if at all. Nonetheless, as set forth above, in this case the hybrid-fee arrangement made good sense for the Debtor and Lurie, allowing each to get part of what they wanted. In the Court's experience a $400 per hour charge for an attorney from southern California is well within the range of typical fees and a 33% contingency rate is also well within the range of typical fees. The fact that these two very typical terms were split down the middle lends itself to a determination that this hybrid fee is typical. With all that being said, the Court is unfamiliar with any case — contingency or otherwise — where the effective hourly rate is over $30,000. Because of that, this factor weighs against granting the Application

4. Reasonableness Determination

Of the eighteen factors required to be considered, ten support granting the Application, seven weigh against granting the Application, and one is not relevant. If the Court's job were simply to tally up the votes the Application must be granted. However, the Court's overriding goal under §330 is to ensure that "the total fee is reasonable when considered against the relevant factors." Tenth Circuit Opinion, 730 F.3d at 1249. "We have recognized that 'bankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable.'" *Id.* at 1250 citing *In re Commercial Fin. Servs.*, 427 F.3d at 810.

In the case at bar, the Court believes there are three factors that weigh most heavily in deciding on the Application: the time spent on the services (comprising two of the eighteen

12

factors); the results obtained; and whether the fee is fixed or contingent. Of these three factors one, the time spent on the services weighs heavily against granting the Application because receiving an hourly rate of over $30,000 for under 50 hours of work does shock the conscience of the Court. However, mitigating against that factor is the fact the Market Center agreed to a hybrid fee. Market Center received a great benefit by having a reduced-hourly-fixed fee, and in return agreed to sacrifice some of the upside. When considered as a contingency fee, an award of 15% of the total recovery is eminently reasonable. Finally, the results obtained by Lurie on behalf of Market Center far exceeded expectations. As the Court stated in the Application Opinion: "The fact that the award of compensation and reimbursement to Applicant is $350,752.06 plus some supplemental attorney fees for Applicant's counsel, thus leaving enough to pay all the other creditor in full and put money back into Debtor's pocket, raises the success to the level of rousing." Application Opinion at 30. With this in mind the Court will determine reasonable compensation for Lurie.

First, Lurie should receive the full amount of the bargained-for hourly rate, plus costs. As set forth in the Application Opinion, this is: $552.59 for the period of April 23 – June 1, 2009 and $8,043.98 for the period of June 1, 2009 – January 21, 2010. *See* Application Opinion at 65. Lurie's entitlement to fees for the work performed by his local counsel, Keleher & McLeod, has not been challenged on appeal and therefore will remain as set forth by the Court in prior orders. The Court does not believe that any enhancement or deduction is appropriate.

As to the amount of the contingency award the Court believes that awarding a 15% contingency on the full amount of the purchase price is unreasonable, notwithstanding the parties' negotiated Retainer Agreement. However, the Court does believe that the award of some contingency fee is reasonable. As set forth above the Debtor valued the real property at

$8,000,000 and valued the claim against Lowe's at $105,000. Lowe's ultimately agreed to purchase the property for $9,750,000, the Court finds that Lurie added total value of $1,645,000 to the bankruptcy estate and it is reasonable, based on the §330(a)(3) and *Johnson* factors, to award Lurie a 15% contingency on that value for a contingency fee of $246,750. In this case, Lurie's work entitles him to an administrative expense of $255,346.57. That translates into an effective hourly rate is $5,836.49 under a lodestar approach. Although this is high, the Court finds that this hourly rate is reasonable under the circumstances of this case following application of the §330(a)(3) and *Johnson* factors.

Finally, the Court does not disturb that portion of the Application Order awarding Lurie his attorney fees of $4,655.49. This results in a total administrative expense of $260,002.06. Because Lurie was initially awarded a total of $350,752.06, Lurie is directed to deposit $90,750 with the Court registry within 120 days.[3]

## IV. Conclusion

An award of $260,002.06 is appropriate in this case. The Court believes that this amount adequately compensates Lurie for his work in this case while honoring the Bankruptcy Code's requirement that total compensation be reasonable. Of the eighteen factors weighed by the Court, the majority support the Application, and of the three factors given the most weight by the Court two support the Application. Nonetheless, the factor relating to time spent on services weighs heavily against the Application and supports the decreased amount awarded by the Court.

An order consistent with this opinion will be entered by the Court.

---

[3] The purpose of the 120 day period is to allow Lurie to amend any previously filed tax returns and liquidate assets if necessary. If, by the 120th day, Lurie has failed to deposit the required amount in the Court Registry, Market Center may request and the Court will enter a judgment for the amount still outstanding.

14

_____
Hon. Niles Jackson
United States Bankruptcy Judge

Date Entered on docket: April 10, 2014

Copies to:

James Rasmussen
Deron Knoner
Keleher & McLeod, P.A.
P.O. Box AA
Albuquerque, NM 87103

Daniel Behles
Moore, Berkson, & Gandarilla, P.C.
P.O. Box 7459
Albuquerque, NM 87194